[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 24, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12328
Non-Argument Calendar

_____

D. C. Docket No. 05-00112-CR-01-WBH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RALPH OUTLAW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 24, 2007)**

Before ANDERSON, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Ralph Outlaw ("Outlaw") appeals his 78-month sentence, imposed after he

pled guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851. Outlaw argues that the drug quantity that the sentencing court attributed to him is not supported by credible evidence and is not supported by adequate factual findings. Outlaw argues that the government's failure to disclose the relevant conduct that would be used to enhance his sentence prior to his guilty plea violated his Fifth Amendment right to due process. Outlaw also argues that the use of relevant conduct to increase the amount of drugs attributed to him violated his Sixth Amendment right to a jury trial.

## BACKGROUND

Outlaw pled guilty to one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 851without the benefit of a plea agreement. During the plea colloquy, Outlaw admitted that he had a prior state criminal record. Outlaw acknowledged that he discussed the sentencing guidelines with his attorney and that he understood those guidelines could affect his ultimate sentence. At the plea colloquy, the government asserted that there was no dispute regarding the amount of heroin involved in the offense, which totaled approximately 21 grams.[1] Outlaw admitted that he was in possession of that amount of heroin, which he intended to sell, when he was arrested in February

---

[1] Outlaw was arrested with 21.56 grams of heroin.

2005. The district court accepted Outlaw's plea and adjudicated him guilty.

Following Outlaw's arrest, law enforcement authorities interviewed Grady Douglas ("Douglas") regarding Outlaw's drug trafficking activities. Douglas had recently pled guilty to possession with intent to distribute heroin. Douglas stated that he supplied Outlaw with approximately 30 grams of heroin every day and indicated that he supplied the heroin that was seized from Outlaw on the day of his arrest. Douglas did not provide any details as to the length of time during which he distributed heroin to Outlaw. Douglas's lawyer later provided a statement to authorities in which Douglas admitted to providing Outlaw with 100 grams of heroin per week from the summer of 2004 until Outlaw's arrest in February 2005. During another interview with authorities, Douglas reiterated his previous statement that Outlaw sold drugs daily. However, as to the amount of drugs involved, Douglas stated that he supplied Outlaw with 30 grams of heroin each day from August/September 2004 until Outlaw's arrest in February 2005.

The probation officer prepared a presentence investigation report ("PSI"). After considering Douglas's statements and the amount of heroin found in Outlaw's possession on the date of his arrest, the probation officer determined that Outlaw was responsible for an aggregate of 4,860 grams of heroin based on his receipt of 30 grams of heroin over a period of 162 days pursuant to U.S.S. G. §

3

2D1.1(c)(3). The probation officer calculated the total offense level to be 32 after subtracting 2 levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). With an adjusted offense level of 32 and a criminal history category of III, the probation officer determined that Outlaw's guideline imprisonment range was 151-188 months.

Outlaw objected to the probation officer's assessment of his relevant conduct, which resulted in an increased offense level based on a finding that he was responsible for over 4 kilograms of heroin, rather than the 21 grams of heroin found in his possession at the time of his arrest. Outlaw further objected to the probation officer's reliance on Douglas's statements arguing (1) that the government's failure to disclose those statements prior to the plea hearing violated his Fifth Amendment right to due process; and (2) because the statements were incredible and unreliable, the government failed to meet its burden in proving the enhanced drug quantity, in violation of his Sixth Amendment right to a fair trial.

At sentencing, the government called Douglas to establish Outlaw's relevant conduct and the amount of drugs attributable to him. Douglas testified that he provided Outlaw with heroin to sell. In particular, he testified that he began to supply drugs to Outlaw in September/October 2004. He testified that he initially supplied Outlaw with 10 grams of heroin approximately 5 to 6 times each day.

4

Douglas testified that, as their business relationship progressed, he supplied Outlaw with 30 grams of heroin twice a day. Douglas indicated that he and Outlaw sold heroin seven days a week, with the exception of a three to four day break in November 2004. Douglas also testified that he had never provided Outlaw with 100 grams of heroin each week, a statement that directly contradicted his statement that was included in the PSI.

The district court found that Douglas's testimony was credible to the extent that Outlaw was involved in the sale of heroin for three to four months prior to his arrest and that Douglas was his principal supplier. However, the court did not find that it could attribute to Outlaw 30 grams of heroin per day, a total in excess of 3 kilograms, because Douglas's testimony as the amount of drugs invovled was unreliable. Ultimately, the court determined that the Outlaw was accountable for 100 grams of heroin a week for three to four months. While this amount calculates to over one kilogram of heroin, the court found that the drug activity did not occur everyday. Therefore, the court reduced the amount to less than 1 kilogram but more than 700 grams.

Accordingly, the court determined that with a 2 level reduction for acceptance of responsibility Outlaw's offense level was 28 with the applicable guideline range of 97 to 121 months' imprisonment. After considering the

5

sentencing factors under 18 U.S.C. § 3553(a), the advisory guideline range of 97 to 121 months, and acknowledging that the advisory guideline range would have been between 78 to 97 months had Outlaw received an additional 1 level reduction for acceptance of responsibility,[2] the court imposed a sentence of 78 months' imprisonment.  The government pointed out that an additional 1 level reduction for acceptance of responsibility would have actually resulted in a range of 87 to 108 months.   The court acknowledged its misstatement; however, the court determined that based on the § 3553(a) sentencing factors a 78-month sentence was reasonable and adequately served the purposes of punishment and deterrence based on the seriousness of the offense and Outlaw's prior drug convictions.  The court specifically stated that even if Outlaw had only be held accountable for 21 grams of heroin, which would result in a guideline range of 24 - 30 months, the court still would have imposed a 78-month sentence based on the § 3553 factors.

## STANDARD OF REVIEW

A district court's determination of drug quantity used to establish a defendant's base offense level is reviewed for clear error.  *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000).  The district court's application of the Sentencing Guidelines presents a mixed question of law and fact.  *United States*

---

[2] Since Outlaw had filed a motion to suppress, which was denied, the government declined to recommend an additional one-level reduction for acceptance of responsibility.

*v. Anderson*, 326 F.3d 1319, 1326 (11th Cir. 2003). The Court reviews the findings of fact for clear error, and its application of the sentencing guidelines to those facts *de novo*. *Id.*

DISCUSSION

### 1.    Drug Quantity

Outlaw argues that the district court's drug quantity determination is not supported by credible evidence and is not supported by adequate factual findings. Outlaw asserts that the sole basis of the district court's drug quantity determination was Douglas' testimony at sentencing and his prior statements used in the PSI. Outlaw argues that the district court found that Douglas was not credible. Outlaw further argues that the district court did not support its drug quantity determination with adequate factual findings and that the only drug quantity supported by the evidence in the record is 21 grams, the amount seized at the time of his arrest.

"When a defendant challenges one of the factual bases of his sentence as set forth in the PSI, the government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003) (per curiam) (quotation and alteration omitted). "It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566

7

(11th Cir. 1995). The necessity of requiring reliable evidence in support of the government's conclusions is particularly important in the case of a drug quantity, since the amount of drugs attributed to a defendant can have a dramatic impact on the sentence. *Id*. at 1567. "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (per curiam).

Here, to prove drug quantity, the government only introduced Douglas's testimony. However, the district court expressly found Douglas's testimony regarding the drug quantity inconsistent and incredible. Despite these inconsistencies, the district court found that Outlaw was responsible for distributing 100 grams of heroin each week, the one amount Douglas testified that he never provided to Outlaw for a period of three to four months. The district court then determined that Outlaw was accountable for at least 700 grams but less than 1 kilogram of heroin because the district court found that Outlaw did not sell drugs every day during that three to four month time period. The record does not support these findings. The district court's calculation was without factual support and was merely speculative as it was based on testimony that was inherently

inconsistent and unreliable. *See Zapata*, 139 F.3d at 1359; *Lawrence*, 47 F.3d at 1566. Therefore, the district court clearly erred in calculating the amount of drugs attributable to Outlaw.

However, this does not end our inquiry. Recently, we issued an opinion in *United States v. Keene*, ___ F.3d ___, 2006 WL 3431929 (11th Cir. Nov. 30, 2006), in which we stated that even if the sentencing court erred in calculating the defendant's Guideline range, we would review the sentence for reasonableness if the sentencing court would have imposed the same sentence after considering the factors in 18 U.S.C. § 3553(a). At sentencing, the district court specifically stated that even if Outlaw was correct in that he could only be attributed with 21 grams of heroin, he still would have imposed a sentence of 78 months based on the circumstances of the case. If the court had only attributed approximately 21 grams to Outlaw, his base offense level would have been 18 pursuant to U.S.S.G. § 2D1.1(c)(11). After subtracting 3 levels for acceptance of responsibility, Outlaw's total offense level would have been 15.[3] With an adjusted offense level of 16 and a criminal history category of III, Outlaw's resulting guideline imprisonment range would have been 24 - 30 months' imprisonment. Accordingly, we must determine whether a sentence of 78 months is reasonable pursuant to § 3553 under the 24 - 30

---

[3] We subtract 3 levels for acceptance of responsibility because the district court implicitly stated that it would have given Outlaw an additional one-level reduction.

9

month Guideline range.

"In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006). These sentencing factors include: "(1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the Guidelines range." *United States v. Scott*, 426 F.3d 1324, 1328-29 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)). "[R]eview for reasonableness is deferential, and the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a)." *United States v. Valnor*, 451 F.3d 744, 750 (11th Cir. 2006) (quotation marks omitted).

Here, the record establishes that Outlaw was engaged in the sale of heroin supplied by Douglas over a period of three to four months prior to his arrest and was arrested carrying approximately 21 grams of heroin. The record demonstrates that the district court imposed a 78-month sentence after considering the seriousness of the offense and taking into account the need for Outlaw to have

10

more respect for the law. The court also considered Outlaw's multiple prior drug convictions, the need for punishment, effective deterrence, and the need to protect the public. Although 78 months' imprisonment is 48 months above the upper-end of the advisory guideline range, we find that Outlaw is unable to carry his burden of showing that the 78-month sentence was unreasonable given the sentencing court's considerations. *See United States v. Eldick*, 443 F.3d 783, 789-90 (11th Cir. 2006) (per curiam) (concluding that the district court's upward variance of 72 months was not unreasonable in light of the seriousness of defendant's offense conduct involving healthcare fraud and distribution of hydrocodone).

2.      Fifth and Sixth Amendment Violations

Outlaw argues that the sentencing court's reliance on Douglas's testimony to establish relevant conduct that increased the amount of drugs attributable to him violated his Fifth and Sixth Amendment rights. However, we need not address these arguments since Outlaw's sentence was not based this relevant conduct.

Accordingly, we find no reversible error and affirm Outlaw's sentence.

**AFFIRMED**.