UNITED STATES of America,
Plaintiff–Appellee,

v.

Dwight Gregory LAWRENCE,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Samuel WILLIAMS, a/k/a Sammy,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Patrick McQUEEN, a/k/a Pat,
Defendant–Appellant.

Nos. 92–6687, 92–6688 and 92–6704.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1995.

Charles Anderson, Montgomery, AL, for appellant Lawrence.

R. Randolph Neeley, Redding Pitt, Montgomery, AL, for U.S.

Maurice Bell, Montgomery, AL, for appellant Williams.

William Blanchard, Jr., Montgomery, AL, for appellant McQueen.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and CLARK, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Appellants Patrick McQueen, Dwight Gregory Lawrence, and Samuel Williams challenge their sentences for distributing, or aiding and abetting the distribution of, cocaine base, commonly known as "crack," in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988).[1] Each appellant ar-

---

**1.** These appeals were originally consolidated with four others. Because these three cases are

gues that the district court erred in attributing over 500 grams of cocaine base to him for sentencing purposes. Because the sentencing records do not establish the facts required to support the sentences, we vacate each appellant's sentence and remand the cases to the district court for further proceedings.[2]

## I.

### A.

On March 31, 1992, a federal grand jury returned a twenty-six count indictment against appellants and sixteen others. The indictment resulted from a Montgomery, Alabama police investigation of cocaine base trafficking taking place in front of 3855 April Street in Montgomery. The first count charged all nineteen defendants with conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (1988). Specifically, count one charged that:

> Beginning on or about the 1st day of August, 1991, and continuing to on or about

the date of this indictment [March 31, 1992], ... the defendants ... did knowingly and intentionally combine, conspire, confederate and agree together with each other and with divers other persons ... [t]o knowingly and intentionally possess with intent to distribute, and to distribute cocaine base ... in violation of [21 U.S.C. § 841(a)(1)], all in violation of [21 U.S.C. § 846].

The next twenty-five counts charged various defendants with distributing, and aiding and abetting the distribution of, cocaine base.[3]

The appellants initially pled not guilty; their trial, and the trial of their codefendants, was set to begin on June 1. On that day, before the trial began, the appellants changed their pleas. Each pled guilty to a single substantive count in exchange for dismissal of the other counts against him: Lawrence pled guilty to count three; Williams to count eighteen; and McQueen to count twenty-three. At their Rule 11 hearings, each appellant admitted facts sufficient to support his guilty plea. Lawrence testified that, on

---

quite similar, we choose to address them separately from the other four.

2. Appellants present additional challenges to their sentences. McQueen argues that the Guidelines' distinction between cocaine base and cocaine violates the Equal Protection Clause of the Fourteenth Amendment. This court has fully addressed, and rejected, this argument. *See United States v. Butler*, 41 F.3d 1435, 1442 (11th Cir.1995) (refusing to subject the distinction to strict scrutiny because the appellants failed to "establish the existence of any discriminatory intent in Congress' action"); *United States v. Harden*, 37 F.3d 595, 602 (11th Cir.1994) (refusing to subject the distinction to strict scrutiny and rejecting appellant's disparate impact argument); *United States v. Byse*, 28 F.3d 1165, 1168–71 (11th Cir.1994) (holding that appellants failed to prove the existence of discriminatory intent sufficient to invoke strict scrutiny), *cert. denied*, —— U.S. ——, 115 S.Ct. 767, 130 L.Ed.2d 663 (1995); *United States v. King*, 972 F.2d 1259, 1260 (11th Cir.1992) (per curiam) (holding that the distinction in sentencing between cocaine base and cocaine withstands rational basis scrutiny). In addition, Williams argues that the court erred in failing to award him a downward departure for acceptance of responsibility, and Lawrence argues that the court should have decreased his offense level to reflect his minor role in the distribution activity. Because we remand their cases for resentencing, we do not address either argument.

3. Count three of the indictment alleged that on January 17, 1992, Lawrence and six others possessed with intent to distribute and distributed cocaine base, and aided and abetted one another in possessing with intent to distribute and distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; count eight alleged that on January 25, 1992, Lawrence, McQueen, and another possessed with intent to distribute and distributed cocaine base, and aided and abetted one another in possessing with intent to distribute and distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; count twelve alleged that on January 31, 1992, McQueen possessed 1.6 grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1); count fifteen alleged that on February 1, 1992, McQueen, Williams, and three others possessed with intent to distribute and distributed cocaine base, and aided and abetted one another in possessing with intent to distribute and distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; count eighteen alleged that on February 4, 1992, Williams distributed an unspecified amount of cocaine base in violation of 21 U.S.C. § 841(a)(1); and count twenty-three alleged that on February 7, 1992, McQueen and another distributed, and aided and abetted one another in distributing, 0.9 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

January 17, 1992, he was in the vicinity of 3855 April Street in the company of codefendants listed in count three and that he assisted in flagging down vehicles and setting up sales of cocaine base. Williams testified that, on February 4, 1992, he was in the vicinity of 3855 April Street and that he possessed and sold cocaine base in that area. McQueen testified that, on February 7, 1992, he was in the vicinity of 3855 April Street, that on that day he was in the company of a codefendant, and that he and that codefendant sold cocaine base to a confidential informant.[4]

A probation officer prepared a Presentence Report ("PSR") for each appellant. The three PSRs are identical in many respects. Paragraphs thirty-five through thirty-eight of each PSR set forth a general recitation of background facts, all of which came from the prosecutor's office:

35. In January 1992, the Montgomery Police Department, Narcotics and Intelligence Bureau, [began] an investigation into the alleged cocaine base trafficking activities, specifically in the 3800 block of April Street in Montgomery, Alabama. . . .

36. In January 1992, the Montgomery Police Department, Narcotics and Intelligence Bureau set up surveillance, using video and audio equipment. During the investigation, information was developed indicating that Virginia Gantt was the organizer of the illegal activities occurring at 3855 April Street. . . . Wallace McCree was indicated as a supervisor.

37. Those defendants working under the direction and supervision of Virginia Gantt and Wallace McCree [included Lawrence, Williams, McQueen, and nine others]. At least seven of Gantt's runners also sold drugs for [Carl Edward] Hudson. . . .

38. During the course of the investigation into this drug trafficking operation, law enforcement agents conducted numerous controlled buys of cocaine

base yielding in excess of thirty-six grams of the illegal substance. . . .

Paragraphs thirty-nine through forty-one of each PSR set forth the probation officer's method of calculating the quantity of cocaine base attributable to each defendant:

39. Based upon the observations of the Montgomery Police Department, Narcotics and Intelligence Bureau, during the period of surveillance of the activities in the 3800 block of April Street, Montgomery, Alabama, drug sales were conducted at any time of the day, day or night, any day of the week and throughout the year. On January 17, 1992, videotaped surveillance was conducted in the vicinity of 3855 April Street. Corporal B.J. McCullough, who operated the equipment, has determined that 66 drug transactions could be seen on the videotapes. The approximate time length of the tapes from January 17, 1992, is four hours.

40. Based upon the number of "rocks" seized or purchased during the course of this investigation and the weight of all the drugs seized or purchased, the United States Attorney's Office has determined the average rock sold in the vicinity weighed .19 grams. *Consequently, approximately 12.5 grams were sold on any given day (66 × .19 = 12.5).*

41. Count I of the indictment covers a time frame of 224 days. When this number of days is multiplied by 12.5 grams per day, the amount of crack sold is 2.8 kilograms.

(Emphasis added.) Finally, paragraph 47 stated:

47. According to the drug quantity table at U.S.S.G. § 2D1.1(c), a base offense level of 38 is assigned to cases involving at least 1.5 kilograms but less than 5 kilograms of cocaine base.

As the above numbered paragraphs indicate, the probation officer estimated the amount of

---

4. After the court accepted the appellants' pleas of guilty, the trial of the remaining codefendants began. All were found guilty.

cocaine base attributable to each appellant by: (1) assuming that the same number of cocaine base transactions that took place during a total of four hours on January 17 (sixty-six) took place on every day of the conspiracy; (2) approximating the weight of cocaine base sold in each of those transactions (0.19 grams per transaction); and (3) assuming that each appellant was involved in the conspiracy during the entire time period covered by count one of the indictment (224 days).[5] Using this method, the probation officer attributed 2.8 kilograms of cocaine base to each appellant (66 × 0.19 × 224) and assigned each a base offense level of 38.

Each appellant sent the probation officer a written response to his PSR in which he objected to the probation officer's method of calculating the quantity of cocaine base attributable to him. Specifically, the appellants objected that: (1) all sales were not reasonably foreseeable by each appellant; (2) the appellants were not members of a conspiracy; (3) the size and scope of the alleged conspiracy was not established by a preponderance of the evidence; and (4) the amount of cocaine base sold in four hours on January 17 was not a valid basis for estimating the total amount of cocaine base sold during each day of the conspiracy because the Government had not established that January 17 was a "typical day" on April Street. The probation officer rejected these objections, relying on the Government's assertion that it had evidence to support those recitations.[6]

The Government also objected to the PSRs, requesting at the appellants' sentencing hearings that the PSRs be amended. The Government proposed to retain the method of calculation originally set forth in

the PSRs, but offered revised calculations of two of the three factors used by the probation officer in estimating the quantity of cocaine base attributable to the appellants: the average weight per transaction and the number of days of each appellant's involvement in the conspiracy. The Government's recalculation of the average weight per transaction resulted in a slightly higher average weight of 0.20 grams, rather than 0.19 grams. The record does not reveal why the Government recalculated this number. The Government's adjustment of the days of involvement was, however, more detailed. The Government adjusted each appellant's number of days of involvement in the conspiracy by: (1) determining the first day that the appellant appeared on video surveillance engaging in drug-related activity; and (2) assuming that the appellant continued to be a member of the conspiracy until March 31, 1992, the date the indictment was handed down. The Government proposed this new method of calculation because it wished to hold each defendant responsible only "[f]rom the point in time at which the United States Government had credible evidence for purposes of sentencing." The Government introduced two exhibits summarizing its method of calculating the amount of cocaine base, but did not present any of the underlying evidence on which these exhibits relied.

The revised calculation of each appellant's involvement in the conspiracy resulted in a much lower amount of cocaine base being attributed to each appellant than the 2.8 kilograms originally set forth in paragraph forty-one of the PSRs. The Government contended that Lawrence and McQueen first

---

5. The probation officer's methodology is easily summarized in the following equation:

Total Amount of Cocaine Base Attributable = (Transactions per Day) × (Average Weight per Transaction) × (Number of Days of the Conspiracy).

6. The probation officer's response to Lawrence's objection to the quantity attributed to him is a typical example of the officer's response to each appellant's objection. In response to Lawrence's objection, the officer stated:

The probation officer maintains that the U.S. Attorney's Office has advised that they have evidence that the total amount of drugs in the

operation amounted to at least 2.8 kilograms. Pursuant to Section 1B1.3(a)(2), based on relevant conduct, the defendant is held responsible for the total amount of drugs "solely with respect to offenses of a character for which Section 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."

In each response, the probation officer failed to offer any specific information regarding the appellant's involvement; she simply stated that the U.S. Attorney's Office had informed her that such evidence existed.

appeared on video surveillance on January 17, resulting in seventy-four days of involvement for each, and that Williams first appeared on January 25, resulting in sixty-six days of involvement for him. Based on these recalculated numbers, the Government asserted that Lawrence and McQueen should be held accountable for 976.8 grams of cocaine base $(66 \times 0.20 \times 74)$ and that Williams should be held accountable for 871.2 grams $(66 \times 0.20 \times 66)$. The probation officer did not object to the Government's proposed amendment; the new calculations replaced paragraphs forty and forty-one of the original PSRs.

### B.

Each appellant's sentencing hearing proceeded in a similar manner: The Government requested that the court adopt the factual recitations of the PSRs as amended by the Government.[7] Next, the Government made a speaking proffer of testimony and other evidence that it stood ready to present. The court then, in each appellant's case, adopted the PSR as amended and sentenced the appellant based on the quantity of cocaine base advocated by the Government, effectively holding that the factual recitations of the PSR alone (as amended) were sufficient to support the quantity approximation.

At Lawrence's hearing, the prosecutor asserted that Lawrence appeared on video surveillance on January 17 and 25 and stated that "[i]f necessary, I can put on a witness who will testify to having seen Mr. Lawrence in the area on other occasions than the two days for which [sic] he was on the tape. Now, that witness is here, ready to be sworn if the Court so desires...." The prosecutor offered for a second time to "present testimony ... that Mr. Lawrence was present on occasions other than January 17th and January 25th." Lawrence still maintained his objection that the facts in his PSR did not support the quantity of cocaine base attributed to him. The court overruled Lawrence's objection and adopted "the findings of the probation officer and the proffer and

statements of the evidence made by the Assistant U.S. Attorney" without hearing any testimony on the subject. In its judgment of sentence, the district court adopted the PSR, as amended by the Government's revised calculation of the quantity attributable to Lawrence, and added its supplemental finding that Lawrence "was involved in a jointly undertaken activity or conspiracy." The court determined that Lawrence's base offense level was 36, that his total offense level was 34 due to a 2–point reduction for acceptance of responsibility, and that his criminal history category was II. The court sentenced Lawrence at the bottom of the applicable Guidelines range, sentencing him to 168 months imprisonment and five years supervised release.

At McQueen's hearing, the prosecutor asserted in response to McQueen's objection that he was not a "runner" that McQueen appeared on video surveillance on four different days and that the video surveillance showed that "he was a runner/seller in the organization that existed at 3855 April Street." The district court concluded that "I am going to adopt the presentence report and the proffer as made by the Assistant United States Attorney" without hearing any testimony or reviewing the video surveillance. In its judgment of sentence, the court adopted the PSR, as amended by the Government's revised calculation, with two caveats: (1) the court sustained McQueen's objection regarding the calculation of his criminal history category; and (2) the court added a finding that McQueen "was involved in a jointly undertaken activity or conspiracy." The court determined that McQueen's base offense level was 36, that his total offense level was 34 due to a 2–point reduction for acceptance of responsibility, and that his criminal history category was II. The court sentenced McQueen at the bottom of the applicable Guidelines range, sentencing him to 168 months imprisonment and five years supervised release.

At Williams' hearing, the prosecutor asserted that Williams appeared on four of the

---

**7.** Although the Government did not refer to its new calculations as amendments to the PSRs, that is, in effect, what they were.

six days for which the Government had conducted video surveillance, that Williams had pled guilty to a substantive count, thus admitting to distributing cocaine base on February 4, 1992, and that Williams was in the area of April Street on April 3, 1992, when the police arrested several of the nineteen indictees. In its judgment of sentence, the district court adopted the PSR, as amended by the Government's revised calculation of the quantity attributable to Williams, and found that Williams "was involved in a jointly undertaken activity or conspiracy" without hearing any testimony on the subject. The court determined that Williams' base offense level was 36, that his total offense level was 36, and that his criminal history category was III. The court sentenced Williams at the bottom of the applicable Guidelines range, sentencing him to 235 months imprisonment and five years supervised release.

### C.

In sum, the PSRs, Rule 11 hearings, and sentencing hearings showed the following: In January 1992, the Montgomery Police Department ("MPD") began an investigation of the area around 3855 April Street. The MPD set up audio and video surveillance and conducted numerous controlled buys of cocaine base. McQueen, Lawrence, and Williams "worked" in some capacity for both the "organizer" and the "supervisor" of the "illegal activities occurring at 3855 April Street," and cocaine base was available "in the 3800 block of April Street" on a twenty-four hour basis. On January 17, 1992, sixty-six cocaine base transactions were recorded on video "in the vicinity of 3855 April Street" over a total of four hours. The average weight of cocaine base seized during the MPD investigation was 0.20 grams per unit. Lawrence testified in his Rule 11 hearing that he was in the area on January 17 flagging down vehicles and setting up sales; McQueen testified in his hearing that he was in the vicinity on February 7 and cooperated with another person in selling cocaine base to a confidential informant; and Williams testified in his hearing that he was in the vicinity on February 4 and possessed and sold cocaine base. At the sentencing hearings, the prosecutor said that Lawrence was recorded

on video surveillance on two occasions and offered to present a witness that would place him on the scene on more than the two occasions that were videotaped. The Government also asserted that video surveillance showed McQueen in the vicinity on four occasions. Finally, the prosecutor said that video surveillance showed Williams on the scene on four occasions and that Williams was present when MPD officers arrived to arrest the indictees on April 3.

From the above information, the district court found that: (1) sixty-six transactions occurred on every day after January 17; (2) each of the sixty-six transactions per day was part of the same common scheme of which the appellants' offenses of conviction were a part; (3) each of the sixty-six transactions per day was reasonably foreseeable by the appellants; and (4) since they could foresee all of the transactions, each appellant was responsible for the transactions that occurred after the first day the appellant was seen in the area. The court sentenced the appellants based on these conclusions.

### II.

■ The district court's determination of the quantity of drugs attributable to each appellant for sentencing purposes is subject to reversal only if it was clearly erroneous. *United States v. Robinson,* 935 F.2d 201, 205 (11th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992). As we discuss below, we find clear error in this case because none of the appellants' sentencing records establish the facts required to support the sentences.

### A.

The district court relied on sections 1B1.3 and 2D1.1 of the United States Sentencing Guidelines in sentencing the appellants. *See* United States Sentencing Commission, *Guidelines Manual* § 1B1.3 (Nov. 1, 1991) ("U.S.S.G." or "Guidelines"); *id.* § 2D1.1. In applying sections 1B1.3 and 2D1.1 to the appellants' cases, the court determined that each appellant's offense involved over 500 grams of cocaine base and that the base

offense level for each appellant was, therefore, 36. *See id.* § 2D1.1(c)(4).

#### 1.

Calculating the base offense level for drug distribution requires a determination of the quantity of illegal drugs properly attributable to a defendant. *See* U.S.S.G. § 2D1.1(a)(3), (c); *id.* § 2D1.1 comment. (n. 12). This, in turn, requires an assessment of the conduct of others for which a defendant is accountable under section 1B1.3. *See id.* § 1B1.3. Section 1B1.3 of the Guidelines requires that a defendant be held responsible for all reasonably foreseeable acts of coconspirators taken in furtherance of any common plan or scheme of which the defendant's offense of conviction is a part. Specifically, subsection 1B1.3(a)(2) requires that "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" are attributable to the defendant for sentencing purposes. *Id.* § 1B1.3(a)(2); *see also id.* § 1B1.3 comment. (n. 2); *United States v. Wilson*, 884 F.2d 1355, 1357 (11th Cir.1989).[8] Distribution of cocaine base is an offense for which section 3D1.2(d) requires grouping of multiple counts. *See* U.S.S.G. § 3D1.2(d); *id.* § 3D1.2 comment. (n. 6).

■ Thus, the Guidelines require a district court to attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's offense of conviction was a part. For example, in *Wilson*, this court affirmed the district court's conclusion that evidence of shipment of over 500 grams of cocaine as part of the same common scheme or plan as the defendant's offense of conviction required attribution of the 500 grams of cocaine to the defendant under the Guidelines. *See Wilson*, 884 F.2d at 1357; *cf. United States v. Munio*, 909 F.2d 436, 438–39 (11th Cir.1990) (per curiam) (holding that courts may consider conduct not contained in the indictment in sentencing a defendant), *cert. denied*, 499

U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991).

#### 2.

■ In determining the quantity of drugs attributable to a particular defendant under the Guidelines, a district court must make proper findings of fact. *See United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir.1993) (noting that a district court must "make individualized findings concerning the scope of criminal activity undertaken by a particular defendant" and then determine the quantities properly attributable to that defendant); *see also United States v. Beasley*, 2 F.3d 1551, 1561 (11th Cir.1993) (quoting *Ismond*, 993 F.2d at 1499), *cert. denied*, —— U.S. ——, 114 S.Ct. 2751, 129 L.Ed.2d 869 (1994). The sentencing procedures facilitate the court's factfinding function. The court begins by reviewing the PSR, which serves a role similar to a pretrial stipulation in a civil case by identifying factual and legal issues that remain in dispute. *See United States v. Roman*, 989 F.2d 1117, 1122 n. 11 (11th Cir.1993) (en banc) (Tjoflat, C.J., concurring), *cert. denied*, —— U.S. ——, 114 S.Ct. 2139, 128 L.Ed.2d 868 (1994); *United States v. Wise*, 881 F.2d 970, 972 (11th Cir.1989). When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence. *Ismond*, 993 F.2d at 1499; *United States v. Alston*, 895 F.2d 1362, 1373 (11th Cir.1990).

■ Although not as rigorous as the reasonable doubt or clear and convincing standards, the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence. As one of our sister circuits noted:

> [T]he Guidelines do not reduce district court judges to mere automatons, passive compilers of ciphers, or credulous naifs who must accept as canon all that which is presented to them regarding a defendant's involvement in the crime charged or conduct relevant thereto.... [T]he prepon-

---

8. Subsection 1B1.3(a)(2) has not been substantially changed since the district court sentenced the appellants. *Compare* U.S.S.G. § 1B1.3(a)(2) (Nov. 1, 1991) *with id.* (Nov. 1, 1994).

derance of the evidence standard ... does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process.... [The standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.

*United States v. Wise*, 976 F.2d 393, 402–03 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993); *see also United States v. Pless*, 982 F.2d 1118, 1129 (7th Cir.1992) ("[A] district judge ... must give meaningful consideration to the presentence report and to objections raised at the sentencing hearing." (citations omitted)); *cf. United States v. Mack*, 655 F.2d 843, 847 (8th Cir.1981) (noting that, before accepting plea agreements, judges " 'must independently satisfy themselves that acceptance of the agreement adequately protects the rights of the defendant and the interests of justice' " (quoting *United States v. Gallington*, 488 F.2d 637, 640 (8th Cir.1973), *cert. denied*, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974))). Moreover, while the Guidelines allow a district court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a) (Nov. 1, 1994), this relaxed evidentiary standard does not grant district courts a license to sentence a defendant in the absence of sufficient evidence when that defendant properly objects to a PSR's conclusory factual recitals. *See id.* § 6A1.3 comment. ("The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair."). The necessity of requiring reliable evidence in support of the Government's conclusions is particularly manifest in cases such as this, where the quantity of drugs attributed to a defendant can have a marked impact on the length of his sentence. *See United States v. Morillo*, 8 F.3d 864, 870 (1st Cir.1993) (noting that "drug quantity profoundly affects sentence length").

■ Once the Government has presented proper evidence, the district court must either: (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing the defendant. Fed.R.Crim.P. 32(c)(3)(D). If the court declines to resolve a factual challenge because it is not relying on the disputed matter in determining the sentence, it must expressly set out in writing any disputed facts left unresolved. *Id.; see also Shukwit v. United States*, 973 F.2d 903, 904–05 (11th Cir.1992) (per curiam).

### B.

Because the appellants objected to the Government's approximation of the quantity of cocaine base attributable to them, the Government was required to move forward with evidence supporting its position. We now turn to the issue of whether the district court clearly erred in finding that the Government had proved the quantity attributable to each appellant by a preponderance of the evidence.

### 1.

■ The district court primarily relied on the PSRs as the basis for its findings. Unfortunately, the PSRs did not provide the necessary evidentiary foundation to support the appellants' sentences. Although the PSRs indicate that an investigation began in January, 1992, that several controlled buys were conducted, that audio and video surveillance took place during the investigation, that sixty-six transactions occurred on January 17, 1992, that the average weight of the cocaine base seized and purchased was 0.19 grams (subsequently amended to 0.20 grams), and that the appellants "worked" under Gantt and McCree, the PSRs provide

no information about the appellants' *individual* involvement. Moreover, the PSRs fail to reveal the sources of much of the information they contain and set forth several conclusions without providing the underlying facts. For example, the PSRs state that "information was developed indicating that Virginia Gantt was the organizer," that "Wallace McCree was indicated as a supervisor," and that "[t]hose defendants working under the direction of Virginia Gantt and Wallace McCree" included the appellants. None of these conclusions is supported by specific facts. The PSRs, therefore, are insufficient to support the district court's findings. *See United States v. Christopher,* 923 F.2d 1545, 1557 (11th Cir.1991) (holding that a conclusory statement in a PSR regarding the amount of drugs attributable to an appellant was insufficient because "no evidence was introduced at [the appellant's] sentencing hearing regarding the amount of cocaine involved").

### 2.

■ The only other sources of evidence that could possibly support the court's findings are the prosecutor's brief proffers of evidence and the appellants' admissions at their Rule 11 hearings. Like the PSRs, however, these sources do not sufficiently support the court's findings. The proffers consisted of perfunctory summaries of the evidence that the Government stood ready to present and references to the video surveillance tapes that were entered into evidence at the separate trial of some of the appellants' co-indictees. The district court heard no testimony on the quantity issue, did not require that any surveillance videotapes be entered into evidence at the hearings, and did not examine any physical evidence. As a result, there is no evidence from the sentencing hearings for us to review. Moreover, no trial evidence exists because none of the appellants went to trial. *Cf. Wise,* 881 F.2d at 973 (holding that the Government's act of proffering the evidence adduced at the appellant's trial—thus effectively incorporating it into the sentencing record—provided a sufficient evidentiary basis for sentencing "[w]hen combined with the appellant's failure to produce contrary evidence or to advance an opposing argument").

■ The only testimonial evidence on the record relevant to the quantity calculation is the testimony the appellants gave at their Rule 11 hearings; this testimony does not, however, sufficiently support the scope of responsibility assessed or the facts and conclusions asserted in the PSR and adopted by the district court. Each appellant merely admitted that he distributed (or aided and abetted the distribution of) cocaine base in the vicinity of 3855 April Street on a specific day; this does not—by itself or in combination with the other information—make the appellants responsible for the cocaine base dealt in the vicinity over the following two months. *See generally* Thomas W. Hutchison et al., *Federal Sentencing Law and Practice* 639 (2d ed. 1994) ("Many facts not determined as part of a guilty verdict or admitted as part of a guilty plea will have a substantial and quantifiable effect on an individual sentence."). Finally, although evidence and testimony that was presented at another trial may be used in a defendant's sentencing hearing, the Government's references to the evidence presented at the trials of co-indictees is insufficient in this case: None of the appellants was given the opportunity to test its reliability or validity, *see United States v. Castellanos,* 904 F.2d 1490, 1496 (11th Cir.1990) ("[W]here the defendant has not had the opportunity to rebut the evidence or generally to cast doubt upon its reliability, he must be afforded that opportunity."), nor is that evidence before us in any form that enables us to review the district court's findings in a meaningful way.

### C.

■ In this case, the district court did not ensure—as it was obligated to—that the Government carried its burden of proof. As a result of this failure, the record in each appellant's case does not support the district court's findings. We therefore remand the appellants' cases to the district court for resentencing. *See Ismond,* 993 F.2d at 1499 (remanding for resentencing because the district court failed to make individualized findings and because the trial evidence did not support the quantity of drugs attributed to

each appellant); *Beasley*, 2 F.3d at 1561–63 (remanding for resentencing because of the lack of a discernable factual basis for the appellants' sentences). In remanding, we express no opinion regarding whether the quantity of cocaine base the Government contended was properly attributable to each appellant may ultimately be proven correct. We do require, however, that the district court base its findings on reliable and specific evidence rather than on the conclusory language of a PSR, the sparse evidence given at a Rule 11 hearing, and the prosecution's mere reference to evidence adduced in the separate trials of co-indictees.

For the foregoing reasons, we VACATE the sentences of McQueen, Williams, and Lawrence and REMAND their cases to the district court for further proceedings consistent with this opinion.

IT IS SO ORDERED.