[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10048
Non-Argument Calendar

_____

D. C. Docket No. 07-00032-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON THORNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 10, 2009)

Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Jason Thorne appeals his sentence of 220 months of imprisonment following his plea of guilt to conspiracy to manufacture, possess with intent to distribute, and distribute a quantity of methamphetamine. 21 U.S.C. §§ 841(a)(1), 846. Thorne challenges the amount of methamphetamine attributed to him in the presentence investigation report and the enhancement of his sentence for causing a substantial risk of harm to a minor. We affirm.

## I. BACKGROUND

On October 7, 2008, officers of the Sheriff's Department of Bulloch County, Georgia, went to the residence of Tony Finch to investigate whether he had a car that had been reported stolen. At the sight of the officers on Finch's property, Victoria Foley discarded a device used to smoke methamphetamine, and she and Marlena Taylor fled. After a search of the property, officers discovered evidence that Finch was manufacturing methamphetamine in a large storage building about 20 feet from Finch's house. The officers obtained a search warrant and discovered in the storage building and Finch's home precursor materials used to manufacture methamphetamine and 108.3 grams of methamphetamine. Among the items discovered in the storage building was a silver thermos that contained anhydrous ammonia.

For the next several days, officers interviewed Finch and his cohorts about

2

the methamphetamine operation. Finch admitted that he had entered a conspiracy to manufacture methamphetamine five months before his arrest and the conspirators produced between 7 and 54 grams each week. Finch stated that he had witnessed Thorne, Brian Dean, and another member of the conspiracy manufacture methamphetamine in a shed behind Glenn Shuman's property in Brooklet, Georgia. Finch said that the group had produced as much as 80 grams of methamphetamine at each cook, and he had seen 80 grams of methamphetamine at Shuman's residence on October 5, 2008. A federal inmate, Billy Joe Williams, told authorities that he had purchased from Finch on at least twelve occasions between 3.5 and 7 grams of methamphetamine.

Other cohorts described Thorne's role in the conspiracy. Victoria Foley, who had been apprehended outside Finch's home, told agents that Thorne had sold her 2 grams of methamphetamine two or three times, Thorne had given her methamphetamine on other occasions, and Thorne had offered to teach Foley to manufacture methamphetamine. Foley stated that Dean and Taylor had a two-year-old daughter who had been at Finch's home the morning of October 7, 2008. Foley also stated that she had transported Thorne, Finch, Taylor, and Taylor's daughter to Shuman's residence, where they obtained anhydrous ammonia that the group brought to Finch's residence in a silver thermos.

3

Shuman was arrested in December 2007 with 88 grams of methamphetamine in his possession. Shuman told investigators that he received methamphetamine from Thorne as compensation for allowing him to stay at Shuman's residence. Shuman stated that Thorne and Dean had manufactured methamphetamine at Shuman's residence on two or three occasions and Thorne "always" supplied the anhydrous ammonia for the methamphetamine cooks. Shuman also stated that the silver thermos that had been discovered in the large storage building belonged to Thorne.

After Finch's arrest, Thorne continued to distribute methamphetamine. While Finch was incarcerated, he gave an inmate a telephone number to order methamphetamine from Thorne. When federal agents later arrested Thorne, they searched his car and discovered a duffle bag containing 32.1 grams of marijuana, 1.01 grams of methamphetamine packaged in three plastic bags, and a spoon and several syringes with methamphetamine residue.

Thorne, Finch, Taylor, and a codefendant were indicted for conspiring to manufacture, possessing with intent to distribute, and distributing 50 grams or more of methamphetamine or 500 grams or more of a mixture of a substance containing a detectable amount of methamphetamine. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii). Thorne executed a plea agreement with the government to plead

4

guilty to the lesser-included offense of conspiracy to manufacture, possess with intent to distribute, and distribute a quantity of methamphetamine. Id. §§ 846, 841(a)(1). As part of the agreement, Thorne agreed to waive his right to appeal his sentence or challenge his sentence in a postconviction proceeding. The district court accepted Thorne's plea of guilty.

The presentence investigation report attributed to Thorne "a minimum of 350 grams of methamphetamine mixture." The report based its calculation "on the 108.3 grams of methamphetamine mixture seized [from Finch's property] on October 7, 2007; the 1.01 grams of methamphetamine seized [from Thorne] on April 25, 2008; and a historical quantity based on statements of codefendants, unindicted coconspirators, and witnesses." The report provided a base offense level of 30, United States Sentencing Guidelines § 2D1.1(c)(5) (Nov. 2007), increased that level by six points because the decision to transport anhydrous ammonia in a thermos created a substantial risk of harm to a minor, id. § 2D1.1(b)(10)(D), and decreased that level by three points for acceptance of responsibility, id. § 3E1.1. The report provided a sentencing range between 235 and 293 months of imprisonment based on Thorne's criminal history of VI as a career offender. Id. § 4B1.1. Because the statutory maximum sentence was 20 years, 21 U.S.C. § 841(b)(1)(C), the Sentencing Guidelines provided a sentence

5

between 235 and 240 months of imprisonment.

Thorne objected to the presentence report on two grounds. Thorne argued that the report relied on unreliable sources to attribute to him 350 grams of methamphetamine. Thorne also argued that there was no evidence to establish that he did not intend to place Taylor's two-year-old daughter at risk of harm because he was unconscious in the front seat of Foley's car when Foley transported the anhydrous ammonia to Finch's residence and that the six-level enhancement was intended to apply when a minor is near a methamphetamine laboratory.

At the sentencing hearing, the government presented evidence to respond to Thorne's objections. Victoria Foley testified that she transported Thorne, Finch, Taylor, and Taylor's two-year-old daughter to Shuman's house, Thorne was awake for part of the trip, and he was unconscious when the group returned to Finch's house with a thermos of anhydrous ammonia. Ross Butler, a forensic chemist, testified that transporting anhydrous ammonia in a thermos or other unapproved container was extremely dangerous because the substance must be kept at very low temperatures and, if it exceeds negative 28 degrees, the substance could erode the thermos or cause it to burst and emit toxic gas that could cause those exposed to suffocate. Butler also testified that the various chemicals discovered in Finch's storage building were highly flammable and the inhalation of those chemicals

6

could burn the respiratory system or cause death. Agent Kent Musey testified about the methamphetamine seized from Finch's residence and the statements by Thorne's cohorts attributing additional amounts of methamphetamine to Thorne.

The district court overruled Thorne's objections to the presentence report. The court adopted the findings of the presentence report about the drug quantity and the risk of harm to the child, and sentenced Thorne to 240 months of imprisonment, "but because [Thorne had waived his right to appeal] and in an abundance of caution . . . impose[d] a sentence of 220 months."

## II. STANDARDS OF REVIEW

We review for clear error "a district court's determination of the quantity of drugs used to establish a base offense level[.]" United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). We also review for clear error findings of fact about whether "the defendant's actions placed a minor at risk." United States v. Florence, 333 F.3d 1290, 1293 (11th Cir. 2003).

## III. DISCUSSION

Thorne challenges his sentence on two grounds. First, Thorne argues that only the 200 grams of methamphetamine seized from him and other members of the conspiracy should be attributed to him. Second, Thorne argues that he is not subject to a six-level enhancement because of his condition when the anhydrous

7

ammonia was transported and because the transportation of anhydrous ammonia was not sufficiently dangerous to place Taylor's child at risk. The government defends the decisions of the district court, but does not request that we enforce the appeal waiver in Thorne's plea agreement.

The district court did not clearly err by attributing to Thorne 350 grams of methamphetamine. The government presented reliable and specific evidence that Thorne was responsible for more methamphetamine than that seized by law enforcement. See United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). In addition to the 108 grams seized from Finch's residence, 88 grams seized from Shuman at his arrest, and 1 gram seized from Thorne, cohorts testified that they had purchased from Thorne and Finch at least 130 grams of methamphetamine and Thorne had participated in two or three methamphetamine cooks at Glenn Shuman's residence that produced 80 grams of methamphetamine. See United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993) ("For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." (citing U.S.S.G. § 1B1.3(a)(1)). Ample evidence supported the amount of methamphetamine attributed to Thorne.

The district court also did not err by enhancing Thorne's sentence for creating a substantial risk of harm to the life of a minor. The district court was entitled to credit testimony from Foley that she, Thorne, Finch, and Taylor transported anhydrous ammonia in an unapproved container and in a vehicle occupied by Taylor's two-year-old daughter. See United States v. Lee, 68 F.3d 1267, 1275 (11th Cir. 1995). Based on Thorne's role in the conspiracy, he was aware of the purpose of the trip and Foley testified that Thorne was conscious when Taylor's daughter was placed in the vehicle. Based on the serious hazards created by handling anhydrous ammonia, the district court did not clearly err by finding that Thorne's participation in that conduct exhibited a reckless disregard for the safety of the child.

## IV. CONCLUSION

Thorne's sentence is **AFFIRMED**.

9