[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11395
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-00320-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARIUS PETTWAY, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 3, 2010)

Before EDMONDSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Darius Pettway appeals his concurrent sentences of 240 and 262-months'

imprisonment, imposed following a jury verdict finding him guilty on multiple counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

## I. Due Process

On appeal, Pettway argues that the government should have provided him notice prior to sentencing that one of its witnesses would testify at sentencing that he had bought crack cocaine from Pettway for a longer period of time than he had indicated during his trial testimony. Pettway contends that the government's failure to provide this information that was favorable to him, unavailable to his counsel, relevant to his punishment, and that could undermine his sentence violated his due process rights as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963)[1] and *Giglio v. United States*, 405 U.S. 150 (1972).[2] Specifically, Pettway contends that

---

[1] In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to establish a *Brady* claim, a defendant must show that: (1) the government possessed evidence favorable to the defendant, including impeachment evidence; (2) the defendant did not possess the evidence, nor could he obtain it himself with any reasonable diligence; (3) the government suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001).

[2] In *Giglio*, the Supreme Court held that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with" due process. 405 U.S. at 153. A *Giglio* error requires that (1) the prosecutor knowingly used false testimony or failed to correct false testimony on discovery, and (2) there is "any reasonable likelihood that the false testimony could have affected the judgment." *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (quotations and ellipsis omitted).

2

the witness's trial testimony that he used crack cocaine for about two years and knew Pettway for about three years was materially different from his sentencing testimony that he had been using and buying crack cocaine from Pettway for nearly six years and that the government's failure to disclose this information to the defense precluded him from impeaching this witness. Because Pettway did not raise a challenge to his sentence based on either *Brady* or *Giglio* with the sentencing court, our review is for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1297-98 (11th Cir. 2005).[3]

After reviewing the parties' briefs and the record in this case, we conclude that the government did not commit a *Brady* violation because it did not possess any evidence favorable to Pettway that was unavailable to him. Pettway was represented by the same counsel at the guilt and sentencing phases of his trial. Thus, the witness's trial testimony was available to Pettway and once the witness testified differently at sentencing Pettway had all of the information he needed to impeach the witness. Moreover, *Brady* requires that the suppressed evidence bear on the outcome of the proceeding. *See Hansen*, 262 F.3d at 1234. In regard to the witness's testimony, the sentencing court stated that even if the witness's estimate

---

[3] To prove plain error, a defendant must show: (1) error, (2) that is plain, and (3) that affects substantial rights. *Rodriguez*, 398 F.3d at 1298. If all three conditions are met, we will exercise discretion to recognize the error, if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

of the amount of drugs he bought from Pettway was "somewhat incorrect," the court was comfortable that he bought enough to reach the 150 grams necessary for the sentence imposed.

Further, the government did not commit a *Giglio* error because Pettway did not establish that the government knowingly presented materially false testimony that had a reasonable likelihood of affecting the judgment. Other than the discrepancy in the witness's testimony, Pettway presented no evidence that the government knowingly solicited false testimony.

Accordingly, the district court did not plainly err in sentencing Pettway to 262 months' imprisonment.

## II. Guideline Calculation

Pettway argues that the district court's drug quantity determination was clearly erroneous, resulting in an inaccurate guideline range. He argues that the district court based its determination on incredible and deficient witness testimony at trial and sentencing.

A district court's determination of drug quantity used to establish a defendant's base offense level under the Sentencing Guidelines is reviewed for clear error. *United States v. Lawrence*, 47 F.3d 1559, 1565 (11th Cir. 1995). When the defendant objects to the base offense level, the government must

4

establish the quantity of drugs by a preponderance of the evidence. *Id.* at 1566. Where the district court's decision on drug-quantity attribution is based on testimony of witnesses who appear before the court, great deference is given to its assessment of the credibility and evidentiary content of that testimony. *United States v. Lee*, 68 F.3d 1267, 1276 (11th Cir. 1995). Further, the Sentencing Guidelines provide that "in an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." U.S.S.G. § 2D1.1, comment (n.12).

The district court based its total drug calculation of at least 150 grams of crack cocaine on the testimony of witnesses who established that Pettway negotiated a controlled buy with undercover police officers for 112 grams of crack cocaine and sold at least another 38 grams to others. *Lee*, 68 F.3d at 1276. Further, the district court gave specific reasons for finding that the government proved by a preponderance of the evidence that Pettway was responsible for the 150 grams of crack cocaine necessary to justify his advisory guideline range. *Lawrence*, 47 F.3d at 1566-69.

**AFFIRMED.**