[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10271
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:07-cr-00030-RLV-WEJ-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROLANDO GODOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 24, 2011)

Before CARNES, WILSON, and BLACK, Circuit Judges.

PER CURIAM:

Rolando Godoy appeals his 97-month sentence, which was imposed after he

pleaded guilty to one count of conspiracy to distribute at least 500 grams of

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Godoy contends that the district court erred in its calculation of the quantity of drugs attributable to him.

## I.

Godoy pleaded guilty to conspiracy to distribute methamphetamine. Because his conduct involved the sale of two different illegal substances—methamphetamine and dimethylamphetamine—the quantity of drugs attributable to him for his role in the conspiracy was converted to the marijuana equivalency of those illegal drugs. See U.S.S.G. § 2D1.1(c) cmt. n.10. The presentence report based the total drug quantity attributable to Godoy on four illegal drug transactions in which Godoy had allegedly participated, and it listed the total quantity as 919 kilograms of marijuana equivalency. Based on that total, which fell between 700 and 1,000 kilograms, the presentence report set the base offense level at 30. See U.S.S.G. § 2D1.1(c)(5) (providing a base offense level of 30 for "[a]t least 700 KG but less than 1,000 KG of Marihuana"). Godoy raised several objections to the presentence report including one that denied he had participated in the four alleged drug transactions, and another asserting that the government had not provided him with information about two of them.

2

At his sentence hearing, Godoy renewed those objections. During the sentence hearing, both sides made concessions and admissions that settled the issues about all of the transactions except one. The government first conceded that it was unable to prove by a preponderance of the evidence one of the alleged transactions, which involved methamphetamine amounting to 170.1 kilograms of marijuana equivalency. That concession left the total alleged drug quantity at 748.9 kilograms of marijuana equivalency, still above the minimum amount of 700 kilograms for a base offense level of 30. Godoy also withdrew his objections to two of the transactions, one involving methamphetamine amounting to 538 kilograms of marijuana equivalency and another involving dimethylamphetamine amounting to 2.9 kilograms of marijuana equivalency.

After that, the only remaining disputed transaction was one involving methamphetamine amounting to 208 kilograms of marijuana equivalency. During the hearing Godoy's attorney admitted that the government had given him information about that transaction and that he had since reviewed that information with his client. Godoy did not, however, admit that he had participated in that transaction or withdraw his objection to its inclusion in the presentence report. About that transaction the presentence report stated:

Agents identified an individual who was selling user amounts of methamphetamine and made controlled purchases from him on March 21 and 22, 2007. Following this individual's arrest on March 23, 2007, he agreed to cooperate with authorities . . . . [The informant] advised he obtained the methamphetamine sold to agents from Rolondo Godoy. [The informant] stated the small quantity of methamphetamine seized from his residence also came from Godoy. Subsequent analysis determined there was . . . 10.4 grams of methamphetamine (actual) [or 208 kilograms of marijuana equivalency], which has been attributed to Godoy.

In responding to Godoy's objections about his participation in that transaction, the government made a brief proffer, which essentially restated in less detail the information alleged in the presentence report. The government said:

The agents actually executed a search warrant on the home of [the confidential informant]. They found methamphetamine there. That methamphetamine was seized; was tested; did show, was positive for the presence of methamphetamine. And [the informant] stated that those drugs had been supplied by Mr. Godoy. The drugs were purchased from Mr. Godoy.

That proffer and the presentence report were the only support presented to the district court regarding the disputed drug transaction. After receiving that proffer and hearing arguments from both sides, the court stated without further elaboration that it would "adopt the findings in the presentence report as modified here" and that "[i]nformation has been furnished as to [the disputed drug transaction]." The court made no further finding about Godoy's participation in the disputed drug transaction.

Using the base offense level of 30 with a 3-level reduction for acceptance of responsibility and a criminal history category of II, the court set Godoy's advisory guidelines range at 78 to 97 months and sentenced him to 97 months imprisonment. Had the district court found instead that Godoy had not participated in the disputed drug transaction, the marijuana equivalency of the drugs attributable to him would have been 540.9 kilograms, which would have reduced his base offense level from 30 to 28. See U.S.S.G. § 2D1.1(c)(6) (providing a base offense level of 28 for "[a]t least 400KG but less than 700KG of Marihuana"). The resulting guidelines range might have been 63 to 78 months instead of 78 to 97 months.[1]

Godoy contends the district court erred by relying on unreliable and unspecific evidence in calculating the quantity of drugs attributable to him.

## II.

We review a determination of the quantity of drugs attributable to a defendant only for clear error. United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 2005). "When a defendant challenges one of the factual bases of his sentence

---

[1] It appears from the record that the 3-level reduction for acceptance of responsibility was recommended by the government in part because of its mistaken belief that Godoy had withdrawn his objection denying his participation in the disputed drug transaction. It is unclear whether the government would have recommended, or the district court would have granted, that reduction if it had been aware that Godoy was denying participating in one or more of the drug transactions.

as set forth in the [presentence report], the Government has the burden of establishing the disputed fact by a preponderance of the evidence." Id. While the sentencing guidelines allow a district court to "consider relevant information without regard to its admissibility under the rules of evidence," the information must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The necessity of requiring reliable evidence in support of the government's position is "particularly manifest in cases . . . where the quantity of drugs attributed to a defendant can have a marked impact on the length of his sentence." United States v. Lawrence, 47 F.3d 1559, 1567 (11th Cir. 1995). Perfunctory summaries of evidence that the government stands ready to present, especially if there has been no trial, are generally not reliable evidence for this purpose. See id. at 1568.

The district court clearly erred by concluding that the government had established the quantity of drugs attributable to Godoy by a preponderance of the evidence. The presentence report alleged only that an informant, after being arrested for selling methamphetamine to undercover law enforcement officers, had told the officers that he had gotten the drugs from Godoy. The government's proffer did nothing more than restate the allegations in the presentence report to which Godoy had objected. The district court relied on that summary of the

evidence. Even if that summary is considered in conjunction with the allegations in the presentence report, it lacked the proper indicia of reliability for sentencing. See Zapata, 139 F.3d at 1359; Lawrence, 47 F.3d at 1567–69.

The government did not present testimony or affidavits from the confidential informant or even from the officers who had arrested the informant and to whom he had allegedly made the statements. It did not proffer specific evidence about the circumstances surrounding the informant's arrest or about the alleged drug transaction between the informant and Godoy. Nor did the government present anything to show that there was a connection or relationship between Godoy and the confidential informant before the informant was arrested. The only evidence proffered by the government was the prosecutor's conclusory statement that the confidential informant had said that "those drugs had been supplied by Mr. Godoy. The drugs were purchased from Mr. Godoy." That is not enough. See Lawrence, 47 F.3d at 1567–69 (finding the unsupported allegations in the presentence report, "the prosecutor's brief proffers of evidence," and the defendant's testimony at their plea hearings insufficient to support the district court's factual findings).

Additionally, the inclusion of that quantity of drugs in this case may have increased Godoy's advisory guidelines range. See Lawrence, 47 F.3d at 1567.

Without inclusion of that transaction, Godoy's base offense level would have been 28 instead of 30, which may have led to lower guidelines range and could have affected the district court's calculus for the sentence it imposed. See supra at 5 & n.1. For these reasons, we vacate Godoy's sentence and remand for resentencing. In doing so, we leave open the possibility that the government can prove by a preponderance of the evidence that the disputed methamphetamine transaction was properly attributable to Godoy. We also leave open the possibility that the reduction for acceptance of responsibility may be revisited on remand, although we do not mean to imply any view about whether it should be.

**VACATED AND REMANDED.**