*302 DIAZ, Circuit Judge,
dissenting in part:
I agree with my colleagues that Robinson freely chose to proceed with his sentencing hearing. But because we part ways as to what, precisely, that choice entailed, I respectfully dissent from Part II of the majority opinion.
I.
The majority apparently believes that Robinson’s “waiver” encompassed his right to challenge the sufficiency of the evidence supporting the drug weight for which he was held accountable. I cannot agree with this overly broad reading.
Before the district court, Robinson objected vigorously to the PSR’s drug weight calculation, focusing particularly on Battle’s credibility. See J.A. 119, 121, 123-126, 132, 135-36, 141-43, 152. After the court expressed concern about Battle’s statements, the government explained that it could call additional witnesses who would prove an even higher drug weight. But neither Battle nor those additional witnesses were available to testify that day. The court presented Robinson with two options[1]:
We’ll do it one of two ways. We’re going to go forward today with what’s here and now, and I’ll make the decisions that I need to make by a preponderance of the evidence. Or I’ll unwind the whole thing. I’ll start the PSR process all over. If there are statements that didn’t for whatever reason, make it to the Probation Office, start again. And, whatever happens, happens. And then, you’ll have a chance to object. And then I’ll, you know, in three months time, see you. And we’ll see what the Pre-Sentence Report looks like, and I’ll make the decisions that I need to make. That’s the only way that I see — those are the only two choices.
J.A. 131-32 (emphasis added). After Robinson intimated his concern for the court’s resources, the choice was presented again: “I’ll consider all of the information that either side wishes to present to me now, or we’ll start all over and I’ll take the case up in 90 days.” J.A. 133.
It is true that Robinson chose to “go ahead and do it now.” J.A. 133. My colleagues say that “[t]he district court explicitly and repeatedly explained that, by choosing to proceed with sentencing, Robinson was agreeing that his drug quantity would be calculated on the basis of the PSR, which relied on Battle’s statement.” Maj. Op. at 299. But this is only part of the story. The district court also “explicitly ... explained” that the court would consider the evidence before it and apply the appropriate evidentiary burden. Indeed, the district court did not make a finding on the reliability of Battle’s statements until after it presented Robinson with his choice. Compare J.A. 131-32, with J.A. 143-44.
To be quite clear: the district court gave Robinson a choice of proceeding with the appropriate evidentiary standard or starting the process over. Robinson continued to object to Battle’s credibility and noted that he did not “want to keep causing The Court [sic] more time and money.” J.A. 133. The district court reiterated the two options. And Robinson elected to “go ahead and do it now.” J.A. 133.
Later, after the court had proceeded with the sentencing hearing and heard further argument about the drug weight calculation, the district court seemed satisfied that it had heard enough. In the midst of a fairly lengthy discourse, the court stated, *303 “[I]f you’re inclined to want to open this all back up, I will open it all back up. But I think I have heard enough to know that the calculations in the [PSR] are credible and rehable, and that I may rely on those in determining the advice of the Guidelines.” J.A. 148^4. The court then went on for two more paragraphs, assigning Robinson’s base offense level and moving on to mitigating circumstances.
The majority opines that “[w]hen presented with [his] choice, Robinson unequivocally stated” his desire to proceed. Maj. Op. at 298. As I understand it, this “unequivocal statement,” rather than Robinson’s later silence in response to a non-question, is what the majority believes to constitute waiver. Indeed, the majority explicitly notes that when the district court made its finding on reliability, Robinson “would not have hesitated to withdraw his waiver if he wished to.” Maj. Op. at 299 n. 3. Thus, the “waiver” the majority touts did in fact precede any findings on credibility. It is difficult to understand how the scope of that affirmative “waiver” — a waiver relying on the court’s representation that it would apply the evidentiary standard — would change simply because Robinson did not immediately object to a finding made much later in the hearing. On this record, I cannot agree that Robinson waived his right to contest the sufficiency of the district court’s finding as to drug weight — a finding that had yet to occur when he chose to proceed.[2] If he waived anything at all, it was the opportunity for a 90-day delay.
II.
Because Robinson did not waive his objection to the sufficiency of the evidence, the district court remained duty-bound to apply the appropriate standard. “[T]he government bears the burden of proving by a preponderance of the evidence that quantity of drugs for which a defendant should be held accountable at sentencing. ...” United States v. Milam, 443 F.3d 382, 386 (4th Cir.2006). The paltry evidence the government offered cannot suffice.
Battle’s “evidence” is a sorry mess. In a 2010 statement, Battle accused Robinson of providing six kilograms of cocaine base; in 2012, less than two kilograms. See J.A. 124-25, 176. The government conceded that the statements differed “significantly,” J.A. 139, yet somehow contends that they are “not inconsistent,” J.A. 128. Of greater concern is Battle’s statement that he regularly purchased PCP cigarettes from Robinson in North Carolina between 2005 and 2008. This defies common sense: as the PSR explains, Robinson lived in Florida for much of that time. J.A. 181-82. The district court excused this discrepancy, noting that those PCP cigarettes were not included in the drug weight calculation.
*304 But such a rationale sidesteps the real issue: by lying about the PCP cigarettes, Battle has shown himself unworthy of belief. And because the government declined to put either Battle or the probation officer who interviewed him on the stand, the court had no opportunity to assess his credibility in any other light.[3] Simply put, what little the government presented to support the drug weight calculation cannot constitute a preponderance of the evidence.
The government’s proffer of other witnesses — witnesses never presented to the probation officer, much less the court— hardly redresses the lack of evidence. “Testifying about facts is the function of the witness, not of the lawyer.” Kalina v. Fletcher, 522 U.S. 118, 130, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); see also Int’l Woodworkers v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1273 (4th Cir.1981) (“The roles of witness and advocate are fundamentally inconsistent....”). A prosecutor’s mere proffer of evidence provides “no evidence from the sentencing hearings ... to review.” United States v. Lawrence, 47 F.3d 1559, 1568 (11th Cir.1995). Thus, these extraneous statements cannot help the government surmount its burden.
I am mindful that factual determinations of credibility generally remain the province of the district court. But “[i]t is the opportunity to hear the witness testify and observe his manner and demeanor on the stand which places the district court in a better position to judge credibility than that of an appellate court which must rely on a cold paper record.” Phillips v. Crown Cent. Petroleum Corp., 602 F.2d 616, 636 (4th Cir.1979) (Widener, J., concurring and dissenting). Here, the district court itself relied on a cold paper record— one riddled with contradictions. Such dubious findings are not “so sacrosanct as to evade review.” Jiminez v. Mary Washington Coll., 57 F.3d 369, 379 (4th Cir.1995).
III.
The majority declares that Robinson made a considered decision and should have to live with the consequences. But that rationale upends the equities — and, indeed, facts — of the case before us. It is not Robinson who seeks a mulligan, but the government.
When Robinson objected to the PSR— before the hearing — the government was put on notice that its “evidence” was suspect. Yet it did not produce Battle. Nor did it produce the probation officer who interviewed Battle. And it had never even submitted the other witnesses’ statements to the probation officer in the first place. Despite its lack of preparation, the government was presented — as the majority sees it — with a win-win scenario: either it would have a second chance to do the job right (securing an even longer sentence), or it would get a pass on the evidentiary standard. “In this case, the district court did not ensure — as it was obligated to— that the Government carried its burden of proof.” Lawrence, 47 F.3d at 1568.
Thus, I would vacate and remand with instructions that the district court resen-tence Robinson on the record — but without crediting Battle’s statements as to drug weight. Any other result would grant the government the very benefit — a second chance to present evidence — that it does not merit. See, e.g., United States v. Archer, 671 F.3d 149, 168 (2d Cir.2011) (“The consensus among our sister circuits is that *305 generally where the government knew of its obligation to present evidence and failed to do so, it may not enter new evidence on remand.”); United States v. Otey, 259 Fed.Appx. 901, 903 (8th Cir.2008) (“[T]he Government had sufficient notice of Otey’s factual objection to the loss amount that it should not be afforded a second opportunity to present additional evidence on this issue.”).
The majority prefers to hold Robinson to a bargain he never made. For this reason, I respectfully dissent from Part II of the majority opinion.

. At this point, Robinson was speaking for himself, rather than through counsel. The district court continued to address Robinson directly for the remainder of the hearing.

. The cases on which the majority relies are inapposite. In United States v. Keeter, for example, the defendant explicitly chose to proceed with sentencing with his current attorney; he argued on appeal that he should not have been represented by an unprepared lawyer. See 130 F.3d 297, 300 (7th Cir.1997). Thus, unlike the court today, the Seventh Circuit held Keeter to a choice he actually made. The other cases cited by the majority similarly fail to apply here, as Robinson forcefully contested Battle's credibility. Cf. Wood v. Mil-yard, -U.S.-, 132 S.Ct. 1826, 1835, 182 L.Ed.2d 733 (2012) (finding waiver where the state "deliberately steered” the court away from the pertinent question); United States v. Guzman, 707 F.3d 938, 941 n. 2 (8th Cir.2013) (finding waiver where defendant withdrew his motion and also signed a consent form admitting his acceptance of the purpose and effect of that withdrawal); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir.2002) ("[H]e then deliberately withdrew his objection.”).

. The district court commented that Robinson "could have called [Battle] to the stand, at this hearing.” J.A. 132. But such a statement misconstrues the burden, which properly belonged to the government.