United States Court of Appeals,

Eleventh Circuit.

No. 94-4240.

UNITED STATES of America, Plaintiff-Appellee,

v.

Donn Darryl BERNARDINE, Defendant-Appellant.

Jan. 29, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-6026-Cr), Kenneth L. Ryskamp, Judge.

Before ANDERSON and BARKETT, Circuit Judges, and YOUNG[*], Senior District Judge.

BARKETT, Circuit Judge:

Donn Darryl Bernardine appeals from a sentence imposed by the district court following his guilty pleas to conspiring to deal in firearms without a license and making false statements to a federally licensed firearms dealer, *see* 18 U.S.C. §§ 371, 922(a)(1)(A) & 924(a)(1)(A). Bernardine argues on appeal that the district court erred in enhancing his base offense level by two levels on the ground that he was a marijuana user. Because we conclude that the evidence was insufficient to support a finding that Bernardine was a marijuana user, we vacate the sentence and remand to the district court.

I.

We review the sentencing court's findings of fact for clear error and its application of law to those facts *de novo. United States v. Rojas,* 47 F.3d 1078, 1080 (11th Cir.1995).

---

[*]Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

The district court sentenced Bernardine under § 2K2.1(a) of the United States Sentencing Guidelines, which sets the base offense level for prohibited transactions involving firearms. While § 2K2.1(a)(7) establishes an initial base offense level of 12, the district court enhanced Bernardine's offense level upon a finding that he was a marijuana user pursuant to § 2K2.1(a)(6), which provides for a level 14 "if the defendant is a prohibited person." The accompanying commentary, upon which the court relied,[1] defines "prohibited person" as, among other things, anyone who is "an unlawful user of, or is addicted to, any controlled substance." U.S.S.G. § 2K2.1, comment. (n. 6). Bernardine objected to the offense enhancement at sentencing, and on appeal he argues that the court should not have enhanced his offense level because the government failed to carry its burden of proving that he was a marijuana user.

## II.

In *United States v. Scroggins,* 880 F.2d 1204, 1209 (11th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990), we stated that "[g]uideline sentencing is an adversarial process [which] envisions a confrontation between the parties similar to that which occurs at a civil bench trial." We noted that the pre-sentence investigation report ("PSI") serves the purpose of a pretrial stipulation in a civil case:

---

[1]Commentary in the Guidelines Manual interpreting or explaining a guideline is binding on the courts unless it violates the Constitution or a federal statute, or is inconsistent with or a plainly erroneous interpretation of that guideline. *Stinson v. United States,* --- U.S. ----, ----, ----, 113 S.Ct. 1913, 1917, 1919, 123 L.Ed.2d 598 (1993).

> In this [PSI], the probation officer sets out the facts of the case and explains how the guidelines should be applied to those facts. After the probation officer prepares the report, he submits it to the parties, who then have the opportunity to object to the probation officer's factual recitations and guideline applications. The probation officer then makes whatever changes in the presentence report that he believes are necessary, and summarizes in an addendum to the report any objections that remain—thereby enumerating the disputed factual and legal issues that the court must resolve at the sentencing hearing.

*Id.* at 1209 n. 11; *see also United States v. Wise,* 881 F.2d 970, 971-72 (11th Cir.1989).

When, as here, a defendant challenges one of the factual bases of his sentence as set forth in the PSI, the government has the burden of establishing the disputed fact by a preponderance of the evidence. *United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir.1993). As this Court has explained:

> Although not as rigorous as the reasonable doubt or clear and convincing standards, *the preponderance standard is not toothless.* It is the district court's duty to ensure that the Government carries this burden by presenting *reliable and specific* evidence. As one of our sister circuits noted:
>
> > [T]he Guidelines do not reduce district court judges to mere automatons, passive compilers of ciphers, or credulous naifs who must accept as canon all that which is presented to them regarding a defendant's involvement in the crime charged or conduct relevant thereto.... [T]he preponderance of the evidence standard ... does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process.... [The standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.
>
> *United States v. Wise,* 976 F.2d 393, 402-03 (8th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993).... Moreover, while the Guidelines allow a district

court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy,' U.S.S.G. § 6A1.3(a) (Nov. 1, 1994), *this relaxed evidentiary standard does not grant district courts a license to sentence a defendant in the absence of sufficient evidence when that defendant properly objects to a PS[I]'s conclusory factual recitals.*

*United States v. Lawrence,* 47 F.3d 1559, 1566-67 (11th Cir.1995) (emphasis added) (citations omitted).  Thus, to support an offense enhancement under § 2K2.1(6), the government has the burden of presenting "reliable and specific" evidence that Bernardine was an "unlawful user of" marijuana.  This the government failed to do.

### III.

In the PSI, the probation officer cites two instances of Bernardine's involvement with controlled substances.  The PSI indicates first that Bernardine once traded marijuana for an automatic rifle, and second that he unsuccessfully negotiated an exchange of firearms for narcotics.[2]  In addition, the PSI concludes:

> The defendant denies any history of drug or alcohol abuse.  In fact, Bernardine specifically stated he only experimented with marijuana in high school and never used the substance regularly.  *Transcripts provided by the government,* however, indicate the defendant used marijuana on a regular basis and was involved in the sales of marijuana.

(emphasis added).  Bernardine objected to the court's consideration of the assertions in the PSI, disputing the fact that he was a marijuana user.  In support of his position, Bernardine presented four witnesses at the sentencing hearing, all of whom testified

---

[2]The PSI's references to exchanges of controlled substances for firearms have no bearing on whether Bernardine was a marijuana user.

that they had known him for several years, that they met with him several times a week, and that they never saw him use marijuana.

In response to Bernardine's challenge, the government stated that its "primary evidence ... to show that during the time of this conspiracy [Bernardine] was a prohibited person within the meaning of the sentencing guidelines" would be transcripts of two tape-recorded conversations between Bernardine and an undercover agent. However, the sole reference in the transcripts to Bernardine's marijuana use occurred when Bernardine was describing an unrelated event involving a third person and gratuitously added that he had "quit smoking pot." After expressing its doubt about the statement's relevance to establish that Bernardine was a marijuana user during the conspiracy,[3] the court asked the government whether it had any witnesses who had seen Bernardine smoking marijuana. The government responded by asserting that it *could* produce three witnesses who were involved in the conspiracy and would testify that they had smoked marijuana with Bernardine. The government, however, produced no such witnesses. Bernardine objected to the government's assertion, claiming that at least one of the government's potential witnesses had denied that he was going to say that he smoked marijuana with Bernardine.

Notwithstanding Bernardine's objection, however, the sentencing court accepted the government's representation of the

---

[3]At one point in the sentencing hearing, the district court asked the prosecutor:

> Well, when he says I quit, how do you know he didn't quit a year ago? I mean, there is no way to know what he is talking about.

facts without requiring it to present any of the witnesses, stating:

> Again, the frustration with the guidelines. Apparently what we have been told and instructed is that we can take proffers of testimony, that's proper.... The government has proffered the testimony of people who were at these deals who were used as straw men, who said they smoked marijuana with them. I will retain the 14 points as indicated by the probation office. I will deny your request to lower it.

Upon review of the record, we conclude that the court misapprehended the legal requirements of proof in sentencing and erred in finding that a preponderance of the evidence supported the government's suggestion that Bernardine was a marijuana user.

IV.

We first address Bernardine's statement that he "quit smoking pot." As the district court noted, the statement is problematic because it does not provide any indication as to when Bernardine quit. Clearly, under § 2K2.1(a)(6) and the accompanying commentary, a defendant's unlawful use of a controlled substance must be ongoing and contemporaneous with the commission of the offense. The government conceded as much at the sentencing hearing:

> Your Honor, I would say in fairness that that provision ought to be interpreted to require that they be a user during the time period of the conduct charged as part of the indictment.

Although it appears upon review of the sentencing transcript that Bernardine did at one time "smok[e] pot," it is equally clear that he had "quit." There is nothing in the record which tells us whether he quit weeks or years before the onset of the conspiracy, or only days before making the statement. Accordingly, Bernardine's statement is inherently insufficient to establish that

he was a "user" during the firearms conspiracy to which he pled guilty.

Second, the government's "proffer" that it could produce three witnesses who would testify to smoking marijuana with Bernardine at some unspecified time in the past also fails to support the enhancement in light of Bernardine's objections. Where a defendant objects to an allegation in a PSI and offers evidence at a sentencing hearing to rebut the basis for the allegation, courts may not simply accept a conclusion in the PSI without any evidentiary support. Here, the PSI's conclusion that Bernardine was a marijuana user was based specifically on government transcripts, but as the district court noted, the sole statement in the transcripts referring to such use was insufficient to support that conclusion. Thus, the government had the burden of coming forth with some evidence to support the PSI's "conclusory factual recitals." *Lawrence,* 47 F.3d at 1567. The prosecutor's mere "proffer" that there were potential witnesses who would support such a conclusion *could not* provide the missing evidence.

While case law from this circuit permits a district court to consider reliable hearsay evidence at sentencing,[4] the kind of

_____

[4]*See Lawrence,* 47 F.3d at 1567 (courts may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial," provided the information has "sufficient indicia of reliability to support its probable accuracy") (citing U.S.S.G. § 6A1.3(a)); *United States v. Query,* 928 F.2d 383, 384-85 (11th Cir.1991) (findings of fact which district court makes in reliance on hearsay statements contained in co-conspirator's PSI not erroneous); *United States v. Castellanos,* 904 F.2d 1490, 1496 (11th Cir.1990) (sentencing court may consider hearsay statements so long as defendant has "the opportunity to rebut the evidence or generally to cast doubt upon its reliability").

"proffer" which the court accepted here was neither reliable nor evidentiary. The prosecutor's bald statement that he could produce three witnesses who would testify to smoking marijuana with Bernardine cannot support the enhancement. The prosecutor himself could not testify to the fact of Bernardine's alleged marijuana use, a fact about which he had no personal knowledge. Moreover, Bernardine was unable to challenge the allegation: he could neither examine the "witness-prosecutor" nor confront the potential declarants. Accordingly, the district court's reliance on the "proffer" of testimony was *not* "proper."

## V.

In light of Bernardine's objections, and in the absence of "reliable and specific" evidence to the contrary, we conclude that the PSI's allegation that Bernardine was a marijuana user lacked the requisite "indicia of reliability" to support an enhancement under § 2K2.1(a)(6). Accordingly, we vacate Bernardine's sentence and remand to the district court for further proceedings consistent with this opinion.[5]

VACATED and REMANDED.

---

[5]We affirm the sentence, without discussion, with respect to all of the remaining issues which Bernardine raised on appeal. *See* 11th Cir.R. 36-1.