[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 22, 2011
JOHN LEY
CLERK

No. 10-12317
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-00150-TCB-CCH-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATHERINE ELLEN TWIGG,
a.k.a. Catherine Twigg,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 22, 2011)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Katherine Twigg appeals her convictions and sentence of 60 months of imprisonment for three counts of wire fraud, 18 U.S.C. §§ 2, 1343, and one count of conspiracy to commit wire and mail fraud, id. § 1349. Twigg challenges the denial of her objection under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), a jury instruction about deliberate ignorance, and the findings about the amount of loss and the number of victims for which she was responsible. We affirm.

The United States argues that we should dispose of Twigg's Batson argument on the ground that she failed to establish a prima facie case of racial discrimination, but we disagree. "We understand the district court to have ruled implicitly that [Twigg] had made a prima facie showing of racial discrimination because 'a district court cannot ignore the prima facie showing requirement.'" United States v. Campa, 529 F.3d 980, 998 (11th Cir. 2008) (quoting United States v. Allen-Brown, 243 F.3d 1293, 1297 (11th Cir. 2001)). The district court required the United States to provide race-neutral reasons for its peremptory challenges, and the district court overruled Twigg's Batson objection on the ground that the United States had "provided legitimate race-neutral reasons for its exercise of peremptory strikes."

The district court did not err when it denied Twigg's <u>Batson</u> objection. The prosecutor provided "comprehensible" and race-neutral reasons for removing five prospective jurors. <u>Rice v. Collins</u>, 546 U.S. 333, 338, 126 S. Ct. 969, 973–74 (2006). The prosecutor removed from the venire three African-American men based on concerns about their unsteady employment: one man had worked in street entertainment, the second man had left a labor union to pursue self-employment, and the third man had provided vague responses to questions about his employment. <u>See</u> <u>Barfield v. Orange Cnty.</u>, 911 F.2d 644, 648–49 (11th Cir. 1990). The prosecutor also removed from the venire a Hispanic man and woman on the ground that they had responded to questions in "broken English" and might "get[] lost" in the "document-intensive case" against Twigg. <u>See</u> <u>United States v. Edouard</u>, 485 F.3d 1324, 1342–43 (11th Cir. 2007). Twigg does not argue that the prosecutor failed to remove any similar-situated white jurors, <u>Edouard</u>, 485 F.3d at 1343, and two African-American men remained on the petit panel after the prosecutor exercised his peremptory strikes, <u>see</u> <u>United States v. Gamory</u>, No. 09-13929, slip op. at 29 (11th Cir. Mar. 11, 2011); <u>Edouard</u>, 485 F.3d at 1343. This Court accords "great deference" to the findings of the district court about the credibility of the reasons for removal of prospective jurors, <u>Edouard</u>, 485 F.3d at

3

1341, and Twigg fails to explain how the district court clearly erred in its finding that the peremptory strikes by the United States were not racially discriminatory.

The district court also did not err when it instructed the jury about deliberate ignorance. The district court told the jury that "[i]gnorance is deliberate if the defendant was presented with facts that put her on notice that criminal activity was particularly likely and yet she intentionally failed to investigate those facts." That instruction is consistent with our decisions that a defendant is deliberately ignorant if her "suspicion [is] aroused but then deliberately omits to make further enquiries[] because [she] wishes to remain in ignorance," United States v. Hristov, 466 F.3d 949, 952 (11th Cir. 2006) (quoting United States v. Rivera, 944 F.2d 1563, 1570 (11th Cir. 1991)). The district court did not misstate the law.

The district court also did not clearly err in its findings about Twigg's amount of loss and number of victims. When a defendant challenges a fact in the presentence investigation report, the United States must "establish[] the disputed fact by a preponderance of the evidence," United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995), after which the district court must "resolve the dispute by making appropriate findings of fact," United States v. Butler, 41 F.3d 1435, 1446 (11th Cir. 1995). The findings of fact "'for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed

4

statements in the PSI, or evidence presented during the sentencing hearing.'" United States v. Ndiaye, 434 F.3d 1270, 1300 (11th Cir. 2006) (quoting United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004)). The district court held Twigg responsible for $2 million in losses caused by the conspiracy based on emails that Twiggs had sent to victims and testimony at trial from Postal Inspector Bryan Musgrove about the operation of the advance fee scheme and from one of Twigg's cohorts, Anthony Tobin, about Twigg's participation in the conspiracy. The district court attributed to Twigg 55 victims based on the presentence investigation report and Musgrove's testimony at the sentencing hearing that he had "examined financial records" of the three primary accounts where the victims of the conspiracy had wired funds, he had separated the deposits "by dates and by time and by amount and by the corresponding name," and he had been "able to distinguish" and identify 55 "unique" victims. See Polar, 369 F.3d at 1255–56.

Twigg relies on our decision in United States v. Bernardine, 73 F.3d 1078, 1081 (11th Cir. 1996), to argue that the United States failed to produce sufficient evidence to prove the number of victims who had been defrauded, but Twigg's reliance on Bernardine is misplaced. In Bernardine, the United States proffered that it could produce three witnesses to establish facts necessary to support a sentencing enhancement, but never produced those witnesses. At Twigg's

sentencing hearing, Musgrove testified about the specific method he used to determine the number of victims. Moreover, even if the district court had erred in its findings, the error would be harmless because the district court stated that it would have "sentenced [Twigg] to the same term" regardless of its calculations. See Williams v. United States, 503 U.S. 193, 203, 112 S. Ct. 1112, 1120–21 (1992); United States v. Tampas, 493 F.3d 1291, 1305 (11th Cir. 2007). Twigg's sentence is reasonable.

Twigg's convictions and sentence are **AFFIRMED**.