[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14618
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20267-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUDIEL ZAPATA VALENZUELA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 23, 2015)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Defendant Judiel Zapata Valenzuela appeals his 70-month prison sentence, which the district court imposed after he pled guilty to conspiring to commit bank fraud and aggravated identity theft, in violation of 18 U.S.C. §§ 1344, 1349 and 1028A(a)(1), respectively.  On appeal, Defendant argues that the district court erred by imposing a three-level enhancement for his role as a manager or supervisor in the conspiracy.  After careful review, we agree and vacate Defendant's sentence.

## I.  Background

The bank fraud scheme for which Defendant was indicted involved theft by Venezuelan Postal Service employees of personal checks belonging to Venezuelans who had bank accounts in the United States.  These checks were forwarded to this country where co-defendant Stanley Axel Peterson-Granucci became the point person for distributing them to co-conspirators, who endorsed the checks and deposited them into their own bank accounts, withdrew the proceeds of those checks, and then divided up the money according to varying formulas dependent on the particular transaction.

Defendant participated in this conspiracy with co-defendants Peterson-Granucci, Marco Eugenio Mendoza, and Roberto Valle, as well as other unidentified co-conspirators.  Like his co-conspirators, after Defendant had

2

successfully withdrawn the purloined funds from his own account, he paid his co-conspirators a cut of the deposited checks and kept a portion for himself.

Defendant was indicted for one count of conspiring to commit bank fraud, eleven counts of bank fraud, and eleven counts of aggravated identity theft. Pursuant to a written plea agreement, he pled guilty to conspiring to commit bank fraud and to one count of aggravated identity theft.

After Defendant entered his guilty plea, the probation office prepared Defendant's presentence investigation report ("PSR"), calculating a base offense level of seven under U.S.S.G. § 2B1.1(a)(1).  Pursuant to §§ 2B1.1(b)(1)(H) and 2B1.1(b)(10)(B), (C), respectively, the probation office applied a 14-level enhancement, based on a loss amount between $400,000 and $1,00,000, and a two-level enhancement because the offense involved sophisticated means and a significant portion of the offense was committed outside the United States.  Based on his purported supervision of co-defendants Mendoza and Valle, Defendant also received a three-level enhancement as a manager or supervisor of criminal activity that involved five or more participants, pursuant to § 3B1.1(b).  Lastly, the probation office applied a three-level acceptance-of-responsibility reduction, pursuant to § 3E1.1(a) and (b), yielding a total offense level of 23.

With no criminal history points, Defendant's criminal history was a category I.  Based on a total offense level of 23 and his criminal history category of I,

Defendant's guideline range was 46 to 57 months' imprisonment for the conspiracy conviction, to run consecutively to the 24-month sentence for the aggravated identity theft conviction.

Prior to and at sentencing, Defendant objected to the manager/supervisor enhancement. Defendant argued that he had not managed or supervised anyone, and that, for the most part, his duties involved cashing checks that he received from Peterson-Granucci. Defendant also disagreed with the PSR's specific assertion that he had pressured his brother to deposit a check or that he had supervised Valle.

The basis for the above factual assertions in the PSR derived from comments that co-defendants Peterson-Granucci and Valle had made to Postal Inspector Luis Abru during their debriefing. At Defendant's sentencing hearing, the Government called Inspector Abru, who recounted those statements. Finding the statements repeated by Abru to be reliable, albeit they were hearsay, the district court found the evidence sufficient to support the role enhancement, overruled Defendant's objection, and applied the three-level enhancement. The court sentenced Defendant to 46 months' imprisonment on the conspiracy count and to a consecutive 24-month sentence for the aggravated identity theft count, resulting in a 70-month total sentence.

4

## II.  Discussion

Defendant argues on appeal that the district court erred in applying the three-level role enhancement because the Government failed to prove by a preponderance of the evidence the disputed facts in the PSR, and thus the Government did not present sufficient evidence that he was a manager or supervisor of the criminal activity.  More specifically, Defendant contends that the evidence offered by the Government in support of the enhancement was too unreliable to warrant being credited by the district court.

### A.    Standards of Review Applicable to Role Enhancement

We review the enhancement of a defendant's offense level based on his role as a manager or supervisor as a finding of fact reviewed for clear error.  *See United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).  We will not reverse for clear error unless we are left with a "definite and firm conviction that a mistake has been committed."  *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation omitted).

The Government must prove a § 3B1.1 aggravating-role enhancement by a preponderance of the evidence.  *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir. 1998).  Likewise, when a defendant objects to a fact in the PSR, the Government bears the burden of proving the disputed fact by the preponderance of the evidence.  *United States v. Bernardine*, 73 F.3d 1078, 1080 (11th Cir. 1996).

5

"Although not as rigorous as the reasonable doubt or clear and convincing standards, *the preponderance standard is not toothless*.  It is the district court's duty to ensure that the Government carries this burden by presenting *reliable and specific* evidence."  *Id.* (quotation omitted).

The district court may base factual findings on evidence that would not be admissible at trial, including hearsay, but such evidence must bear sufficient indicia of reliability, and the defendant must have an opportunity to rebut it. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010); U.S.S.G. § 6A1.3(a).  Further, as long as hearsay statements are consistent with other evidence concerning defendant's role in the conspiracy, the district court's consideration of such statements will not constitute error.  *United States v. Gordon*, 231 F.3d 750, 759 (11th Cir. 2000).

The Sentencing Guidelines call for a three-level enhancement where "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(b).  Factors that courts should consider when determining whether to apply this enhancement include:  (1) the exercise of decision-making authority; (2) the nature of the participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the

6

illegal activity; and (7) the degree of control and authority exercised over others. *Id.* § 3B1.1, cmt. (n.4). "There is no requirement that all of the considerations have to be present in any one case." *United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010) (quotation omitted).

Evidence that the defendant recruited and instructed participants in the conspiracy is sufficient to support a leadership enhancement. *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006). However, a defendant's status as a middleman or distributor is insufficient to support a managerial role enhancement. *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993). Rather, the Government must establish that the defendant exercised "authority in the organization that perpetrates the criminal conduct, the exertion of control, or leadership." *Alred*, 144 F.3d at 1422.

## B.   Evidence in Support of Role Enhancement

The district court relied on three facts to support its inference that Defendant was a supervisor or manager:[1]  (1) that Defendant directed co-defendant Valle[2]; (2) that co-defendant Valle told Inspector Abru that Defendant "directed" other runners of checksand that co-defendant Peterson-Granucci told Abru that

---

[1]  Defendant disputes only the characterization of his actions as being those of a supervisor. He does not disagree that the "criminal activity involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(b).

[2]  The PSR had originally indicated that Defendant also "directed" Mendoza, but the Government agreed at sentencing that there was no evidence of any such direction.

Defendant had pressured Defendant's brother to deposit a check, against the will of that brother.

Defendant disputed the accuracy of these assertions at sentencing and, on appeal, he repeats his argument that the Government failed to prove the above facts by sufficient, reliable evidence. Further, as the Government appears to agree, should the above facts be deemed not to be proved by a preponderance of reliable evidence, any inference that Defendant functioned as a manager or supervisor in the conspiracy must likewise fall. We agree with Defendant that the evidence in this record is too thin to support the enhancement.

As noted, that evidence was based entirely on that portion of Inspector Abru's testimony that recounted statements made by two of Defendant's co-defendants during their debriefing. But before turning to those statements, it is instructive that many of the factual averments in the PSR, as well as some of Inspector Abru's testimony, supports an inference that, with the exception of Peterson-Granucci, who was the source of all the checks, the other identified participants in the check-cashing ring appear to have been on a relatively equal footing with each other, with little specific evidence that defendant was supervising anyone.

Relying on interviews with Peterson-Granucci, the PSR indicates that co-defendant Mendoza brought Defendant into the scheme, telling Peterson-Granucci

that, like Mendoza, Defendant could deposit stolen checks into his own personal bank accounts. Peterson-Granucci then provided stolen checks to both Defendant and to Mendoza, directing these two men as to the amount to write on the blank checks and providing Defendant with fraudulent passports in the names of the victims of the theft that facilitated Defendant's ability to cash the stolen checks.

In fact, in his testimony, Inspector Abru suggested that, based on his own investigation and debriefing of the defendants, it was his impression that Valle, Mendoza, and Defendant seemed to occupy equivalent roles in the scheme. Specifically, when asked on cross-examination whether Valle, once he had received checks to cash, required or received any direction by Defendant as to how to accomplish that task, Inspector Abru seemed to indicate that such direction was not necessary.

> Q:   He [Valle] didn't have to have any directions from Mr. Zapata or anybody else on how to do that [negotiate stolen checks] because he independently knew how to deposit checks?
>
> A:   They all working together. They were all coming to agreement together. . . .So, who directed at specific times Valle or who directed Mendoza at specific times, it's hard to tell apart.
>
> Q:   Very good. So, in other words—and I think this is borne out by the overall facts. They all—these people all worked together, did they not?
>
> A:   Yes, they did.

9

Breaking down the above three facts that the Government argues support the role enhancement, we examine first the allegation that Defendant supervised co-defendant Valle. The evidence for this assertion is Abru's understanding from talking to Peterson-Granucci and Valle that, as to some of the checks that Valle cashed, these checks had been sent to the address of Valle's mother and that Defendant had caused those checks to be sent to that address. We are not so much concerned whether Abru's hearsay declaration on this point is reliable or not as we are that this fact, even if true, does not, by itself, confer a leadership role on Defendant. In any enterprise involving multiple tasks or transactions, there must be some coordination of the logistics. Once Valle agreed to begin cashing checks in his own account, he first had to receive those checks before he could negotiate them. We do not discern a leadership role based on whose idea it was—Defendant's or Valle's—to send the checks to Valle's mother's address; that would appear to be a minor detail in the scheme of things. *See United States v. Martinez*, 584 F.3d 1022, 1028 (11th Cir. 2009) (noting there is a distinction between creating or managing a transaction and merely coordinating the transaction; the person performing the latter duty may simply be "a subordinate charged with dealing with the relatively minor details of completing that transaction.")

Second, Valle recounted to Inspector Abru that, on one occasion, he and Defendant met with some of their check runners in Miami, at which meeting

10

Defendant provided the checks to be negotiated to the runners and "also got the cash back from the runners to give to everybody."  Although the Government has not attempted to corroborate this hearsay statement, nor did it call Valle as a witness, we will assume, for purposes of discussion, that Valle's statement is accurate so far as it goes.  But the bigger problem is that the statement is so lacking in detail that we cannot attribute a supervisory role to Defendant based on this isolated and unelaborated comment.  As we noted in *Martinez*, in discussing similar inadequacies in the Government's showing of a leadership role for the defendant in a drug conspiracy, the failure to provide details as to how the defendant organized or directed the criminal endeavor or what, if any degree, of decision-making authority he exercised, makes it impossible to conclude that the Government has met its burden of establishing that the defendant exercised a leadership role.  *Id.* at 1028, 1029 ("[T]here is precious little we can infer from the bare, undisputed record that Martinez exercised any position of leadership or authority. . . .The facts to which Martinez acceded merely reveal that he acted in concert with his co-conspirators. . . .[and that he] 'utilized other individuals' to mail and receive drug shipments.")

It may well be that the Government could have justified a role enhancement for Defendant had its counsel further developed the information provided in the terse and vague statements offered by the two co-defendants.  Yet, the Government

did not call these men to testify or otherwise put any meat on the bones of their conclusory statements. That being so, we conclude that the above two assertions do not provide a sufficient basis for imposing the leadership enhancement.

The Government's first two arguments having failed to persuade, that leaves only the Government's assertion that, on one occasion, Defendant pressured his brother to deposit one of the stolen checks from Venezuela.[3] As Defendant objected to this statement in the PSR, the burden was on the Government to provide evidence in support of the PSR's finding. *See Bernardine*, 73 F.3d at 1080. At sentencing, the Government offered only Inspector Abru's hearsay testimony that Peterson-Granucci had told him that Defendant had pressured his brother into depositing a check. Although Defendant was vehement in his objection that this statement lacked reliability or corroboration, the Government offered little evidence, or even much of an argument, to demonstrate that Peterson-Granucci's statement was reliable.[4] Indeed, as recounted, the unexplained

_____

[3] The Government does not appear to be arguing that the recruiting, alone, of his brother would be sufficient in this case to render the defendant a supervisor in the scheme. Indeed, the Government would be hard-pressed to make this argument, given that Peterson-Granucci reportedly stated that Mendoza brought Defendant, as well as three other people, into the scheme. Yet, the PSR did not recommend a role enhancement for Mendoza, nor as far as we can determine did the Government ask for such an adjustment. Further, Peterson-Granucci also stated that Valle brought two individuals of his own into the scheme. Again, the PSR recommended no role enhancement for Valle.

[4] The Government solicited testimony from Inspector Abru that Defendant's brother's bank records corroborated that the brother did, in fact, deposit a check. Yet, given Defendant's denial to Abru that he had pressured his brother into depositing the check and Abru's perception that

12

statement by Peterson-Granucci gives no hint as to how he would have known that Defendant had pressured his brother. Was Peterson-Granucci there when the pressure was applied? Did the brother or Defendant recount this to him? Neither the PSR nor the testimony of Abru offers any insight.

In fact, weighing in against a conclusion that the Government proved the reliability of Peterson-Granucci's assertion is further testimony of the postal inspector on cross-examination as to his inquiry in this matter. The inspector stated that he had asked Defendant about the allegation, during the several hours that the latter spent being debriefed by the inspector, and Defendant denied ever pressuring his brother. When asked whether he perceived Defendant to have been "totally honest and open with you," Inspector Abru answered, "As far as I can tell, yes." And, for whatever reason—whether he thought that Defendant was truthful in his denial or that the matter was simply not that important—Inspector Abru confirmed that he never made any effort to contact the brother to get the latter's version of events.

Accordingly, assuming that a role enhancement would have been warranted had the Government demonstrated that Defendant pressured his brother to deposit

---

Defendant seemed to have been honest during the debriefing, the fact that the brother may have deposited a check sheds no light on whether he had done so only after having been pressured by Defendant.

a stolen check, the hearsay statement offered in support of this assertion was not a sufficiently reliable basis for drawing that factual inference.[5] *See Ghertler*, 605 F.3d at 1269.

## III.    CONCLUSION

In short, the Government has offered scant evidence that Defendant exercised a managerial or supervisory role in this conspiracy.  Accordingly, we conclude that the district court erred in applying the three-level aggravated-role adjustment under U.S.S.G. § 3B1.1(b).  Further, "remand for further findings is inappropriate when the issue was before the court and the parties had an opportunity to introduce relevant evidence.  *United States v. Canty*, 570 F.3d 1251, 1257 (11th Cir. 2009) (*citing United States v. Simons*, 206 F.3d 392, 399 n.11 (4th Cir. 2000)).  We therefore vacate the sentence imposed and remand with instructions to resentence Defendant without the three-level § 3B1.1(b) enhancement.

---

[5]  The Government has also argued that because Defendant did not specifically object to Paragraph 34 in the PSR, this paragraph alone would support the enhancement.  (Paragraph 34 stated that "[a]t the direction of Peterson-Granucci and [Defendant], Valle deposited checks into his Citibank accounts ending in 5389 and 5745, withdrew money from these accounts inside of Citibank and at various ATMs, and provided Peterson-Granucci and [Defendant] their share from the deposited checks."  It is true that the district court may base factual findings on undisputed statements in the PSR, and facts in the PSR are deemed admitted unless a party objects to them before the sentencing court.  *See United States v. Beckles*, 565 F.3d 832, 843-44 (11th Cir. 2009).  We, however, disagree that Defendant failed to object to Paragraph 34.  The facts put forth in paragraph 34 are simply a slightly more detailed explanation of the facts put forth in paragraph 39, and the record reflects that Defendant specifically objected to paragraph 39.  Moreover, Defendant explicitly argued in his objections to the PSR and at sentencing that he did not direct anyone, including Valle.

14

**REVERSED AND REMANDED.**