[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11134
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cr-14002-RLR-3

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

VENTERIA LEANET REASON,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 12, 2018)

Before TJOFLAT, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Venteria Leanet Reason appeals her 135-month sentence, imposed after her guilty plea, for conspiracy to import dibutylone HCI ("dibutylone") into the United States, in violation of 21 U.S.C. §§ 952(a) and 963. Reason's sentence is 100 months below the lower end of the Sentencing Guidelines range.[1] She argues that: (1) the District Court procedurally erred by misapplying U.S.S.G. § 2D1.1 cmt. n.6 ("Application Note 6") and clearly erred by finding that, for purposes of calculating her offense level, MDMA and MDEA were the substances "most clearly related" to dibutylone and ethylone, respectively[2]; (2) the District Court erred in applying a three-point enhancement, pursuant to U.S.S.G. § 3B1.1(b), based on its finding that she was a manager or supervisor of the conspiracy; and that (3) her sentence is otherwise procedurally and substantively unreasonable because the District Court relied on a clearly erroneous fact—that a "support network" would care for her children while she was incarcerated—and because the Court failed to consider all of her arguments for a downward variance. We disagree with each of Reason's arguments and affirm the District Court's sentence.

---

[1] Based on a total offense level of 38 and a criminal history category of I, Reason's guidelines range would have been 253 to 293 months. Statutorily, however, she was subject to a maximum penalty of 240 months. Her applicable guidelines range was therefore 235 to 240 months' imprisonment.

[2] Reason's total offense level reflects that she was held responsible for, among other substances, 10.34 kg of dibutylone and 9.98 kg of ethylone.

2

## I.

We first address Reason's arguments that the District Court procedurally erred by misapplying Application Note 6 and that it clearly erred by concluding that dibutylone and ethylone were most closely related to MDMA and MDEA.

We review *de novo* both a district court's interpretation of the guidelines and its application of the guidelines to the facts. *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011). Our review, further, gives due regard to the sentencing court's opportunity to judge the credibility of witnesses. *United States v. Jenkins*, 901 F.2d 1075, 1083 (11th Cir. 1990).

Ethylone and dibutylone are not included in the guidelines' Drug Quantity Table. *See* U.S.S.G. § 2D1.1(c). To determine the base offense level of a substance not specifically referenced in the guidelines, a court must identify the substance included in the guidelines that is "most closely related" to the unlisted substance. U.S.S.G. § 2D1.1 cmt. n.6. Then, using the most closely related substance's marijuana-equivalency ratio as set forth in the guidelines' Drug Equivalency Tables, the court converts the quantity of the unlisted substance to its marijuana equivalent. U.S.S.G. § 2D1.1 cmt. n.8(A), (D). To determine the most closely related substance, the court "shall, to the extent practicable, consider" three factors:

3

(A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

(B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

U.S.S.G. § 2D1.1 cmt. n.6.  The guidelines provide that one gram of either MDMA or MDEA is equivalent to 500 grams of marijuana.  U.S.S.G. § 2D1.1 cmt. n.8(D). They also provide that one gram of methcathinone, the comparator substance urged by Reason, is equivalent to 380 grams of marijuana.  *Id.*

Reason argues that the District Court procedurally erred in two ways when determining that dibutylone was most closely related to MDMA and ethylone to MDEA.  First, she contends that because dibutylone and ethylone were discussed mainly as "stimulants" throughout her sentencing, while the guidelines' Drug Equivalency Tables classify MDMA and MDEA as "hallucinogens," *see id.*, the Court erred in its "most closely related" determination.[3]  That is, if the evidence indicates that the substance at issue has one classification, the court cannot find that a substance with a different classification in the Drug Equivalency Tables is

---

[3] The Government's experts, though repeatedly noting the stimulant *effects* of dibutylone and ethylone, did not necessarily classify them as "stimulants."

4

the most closely related.  Second, Reason argues that the District Court misapplied the guidelines' three-factor test outlined above.

Reason's first argument is unpersuasive.  The relevant guidelines provision instructs a court to find the substance most closely related to an unlisted substance by considering, "to the extent practicable," similarities in the substances' structures, effects, and potencies.  U.S.S.G. § 2D1.1 cmt. n.6.  There is no further requirement in the text that the comparator substance be within the same Drug Equivalency Tables classification as the unlisted substance.  A number of reasons guide against reading such a requirement into the provision.

Nothing in Drug Equivalency Tables suggests its classification of substances has any bearing on a court's "most closely related" determination.  Rather, the tables assist the court in its second step:  converting the unlisted substance to its marijuana equivalent *after* identifying the most closely related comparator.  And further, the guidelines do not instruct courts to classify an unlisted substance under one of the Drug Equivalency Tables classifications in the first instance.  Making courts pick a comparator substance in the same class would, without any textual support, require courts to classify the unlisted substance, as such would be necessary in order to find a comparator in the same class.  What's more, even if a court went ahead and classified the unlisted substance, there may be situations in which the substance "most closely related" to the unlisted substance under the

5

guidelines' three-factor test is not within the same class. A drug with a predominantly stimulant effect might be most similar in structure and effect to a drug pegged as a hallucinogen, more so than any substance classified as a stimulant. Indeed, as the Government's experts testified to in this case, substances can have multiple effects on a user—MDMA and MDEA have not only a hallucinogenic effect but also a strong stimulant effect, similar to that of dibutylone and ethylone. Thus, in some circumstances, Reason's proffered requirement could negate the guidelines' three-factor test—a court might be unable to pick the most closely related comparator under the test because the Drug Equivalency Tables classify it differently. By implication Reason therefore asks, in this situation, that we favor a textually nonexistent "requirement" over an expressly set out test. Her first argument fails.

Reason's second argument fares no better. She specifically argues that because the Government's experts testified that MDMA and MDEA are "substantially" but not "*most*" similar in structure to dibutylone and ethylone respectively, the District Court misapplied Application Note 6 and erred in choosing MDMA and MDEA as comparators. By crediting this testimony, Reason posits, the Court could not have properly decided that these substances were the "*most* closely related" to the unlisted ones. Reason adds that the Court should therefore have credited her expert, who testified that dibutylone and ethylone were

"most" similar in structure to methcathinone, a drug with a lower marijuana-equivalence ratio.  This theory falls short.

The first prong of the three-factor test requires a court to consider whether "the substance not referenced in this guideline has a chemical structure that is *substantially similar* to a controlled substance referenced in this guideline." U.S.S.G. § 2D1.1 cmt. n.6(A) (emphasis added).  The testimony of the Government's experts thus traced the provision.  Application Note 6, moreover, makes clear that finding the "most closely related" comparator substance is holistic, derived from all three factors.[4]  Here, the District Court found the Government's experts' testimony more credible than that of Reason's experts as to chemical structure.  It accordingly concluded that the chemical-structure analysis favored MDMA and MDEA.  *See Jenkins*, 901 F.2d at 1083.  Armed with that conclusion, the Court went on to complete the analysis in favor of the Government.  There was no misapplication of Application Note 6.

Reason's argument, at its heart, is really that the Court should have reached the conclusion she wanted—that dibutylone and ethylone are most closely related to methcathinone—when employing the three-factor test.  She thus argues that the Court erred factually rather than procedurally.  We review a district court's factual

---

[4] Indeed, under the test, it is of no moment if the substance used as a comparator is not the closest in structure to the unlisted substance, as long as the other factors favor the comparator substance.

7

findings under the guidelines for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). Factual findings are clearly erroneous when, on the record as a whole, the appellate court "is left with a definite and firm conviction" that a mistake was made. *Barrington*, 648 F.3d at 1195. A district court's choice between two permissible views of the evidence, though, cannot be clear error. *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).

Here, the District Court weighed the testimony of both parties' experts and, in a detailed order, explained its finding that dibutylone and ethylone were closer to MDMA and MDEA in both structure and effect on the user than they were to methcathinone. It found that the third factor, potency, was neutral. The voluminous evidence and testimony presented by the Government enabled the Court to make these findings.[5] Accordingly, choosing between two permissible views of the evidence—the position proffered by each party and its experts—the Court held that MDMA and MDEA were the proper comparators. This conclusion was not clearly erroneous. *See id.*

In sum, the District Court neither procedurally nor clearly erred in applying Application Note 6 and concluding that dibutylone and ethylone were most closely

---

[5] The Government must prove a contested sentencing fact set forth in the presentence investigation report—here, that MDMA and MDEA were the most closely related substances—by a preponderance of the evidence, using reliable and specific evidence. *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). It undoubtedly met this burden through its experts' testimony.

related to MDMA and MDEA, respectively.  The Court was therefore correct in applying a 1-to-500 conversion ratio when calculating Reason's offense level.

## II.

Reason next argues that the District Court erred in applying a three-point enhancement, pursuant to U.S.S.G. § 3B1.1(b), based on its finding that she was a manager or supervisor of the conspiracy.

Under § 3B1.1(b) of the guidelines, a court may enhance the defendant's offense by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  In assessing the defendant's role in the offense, the court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*See* U.S.S.G. § 3B1.1 cmt. n.4; *United States v. Njau*, 386 F.3d 1039, 1041 (11th Cir. 2004) (per curiam).  There is no requirement that all of these factors be present; they "are merely considerations for the sentencing judge."  *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009).  "[T]here must be evidence," however, "that the defendant exerted some control, influence, or decision-making authority over another participant in the criminal activity."  *Id.*

9

When a defendant challenges one of the factual bases of her sentence, the government must prove the disputed fact by a preponderance of the evidence. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014) (per curiam). Although not as rigorous as the reasonable-doubt or clear-and-convincing standards, the preponderance standard is not toothless; it is not a license to sentence the defendant absent sufficient evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005); *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995).

Reason does not contest that the criminal activity involved five or more participants or was otherwise extensive. And the Government, through the testimony of Special Agent McBride and codefendant Natashia Thames, showed by a preponderance of the evidence that Reason, *inter alia*, ordered drugs from China and sent wire transfers there; packaged, sold, and distributed drugs in the United States; recruited and directed codefendant Thames; and permitted her husband, codefendant Julius Reason, to use her firearm. This evidence is sufficient to prove that Reason was a manager or supervisor of the conspiracy. *See Aguilar-Ibarra*, 740 F.3d at 592; U.S.S.G. § 3B1.1 cmt. n.4. The District Court thus did not err in concluding that the § 3B1.1(b) enhancement applied.

10

III.

Finally, Reason claims that two additional District Court errors render her sentence procedurally and substantively unreasonable.  She first argues that the Court relied on a clearly erroneous fact—that a "support network" would care for her children while she was incarcerated.  Second, she contends that the Court failed to consider all of her arguments for a downward variance.  Specifically, it failed to consider her arguments that a lower equivalence ratio should be used because those of MDMA and MDEA are unfitting and that she should not receive a two-point enhancement for being directly involved in importing a controlled substance.[6]

We review a sentence's reasonableness under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  A two-step process guides our review.  *Id.* at 51, 128 S. Ct. at 597.  First, we confirm that the district court committed no significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*  We then consider the substantive reasonableness of the sentence given totality of the circumstances.  *Id.*  The party challenging the

---

[6] *See* U.S.S.G. § 2D1.1(b)(15)(C).  This enhancement applies only to those who, like Reason, also received a § 3B1.1 Aggravating Role enhancement.

11

sentence bears the burden of proving the sentence unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

A district court's sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). 18 U.S.C. § 3553(a). When a district court decides that the § 3553(a) factors support a variance, it should explain "with sufficient justifications" why the variance "is appropriate in a particular case." *Gall*, 552 U.S. at 46, 128 S. Ct. at 594. The court's justification must be "compelling enough to support the degree of the variance and complete enough to allow meaningful appellate review," but "an extraordinary justification" is not required. *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

The District Court did not procedurally err in determining that Reason had a "support network" to care for her children while she was incarcerated. Reason herself provided letters of support showing the existence of such a network. And Reason's claim that the Court ignored her argument that lower equivalence ratios should be used than those of MDMA and MDEA is equally unavailing. The Court explained at length why it chose those two substances as comparators. It did not need to take the further step of expressly stating why it then chose to use the equivalency ratios assigned to those substances rather than the reduced ratios

12

Reason urged.[7] Reason's final argument—that the Court erred by not considering her request to eliminate the two-point enhancement for being directly involved in importing narcotics—also fails. As described above, the Government put forth much evidence illustrating Reason's direct involvement in importing drugs from China. It is implicit that this evidence informed the Court's decision to apply the enhancement. Ultimately, there is enough in the record and in the District Court's explanation of Reason's sentence to satisfy us that the Court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *See Rita v United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007).

Lastly, as to its substantive reasonableness, Reason's 135-month sentence fairly reflects the Court's consideration of the sentencing factors. *See United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010). The record and the Court's lengthy explanation at sentencing justify the 100-month downward variance it applied. And that Reason's sentence is well below the relevant statutory maximum further diminishes her position that it is substantively unreasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). Accordingly, the District Court did not err in imposing Reason's 135-month sentence.

---

[7] Reason did not request that the 1-to-380 ratio of methcathinone, the comparator substance for which she argued, be used. She instead urged that a 1-to-40 ratio be used for dibutylone and a 1-to-100 ratio be used from ethylone.

**AFFIRMED.**