[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10849
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20531-KMW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAYHEIM MALIK EBERHART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 18, 2019)

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Tayheim Eberhart appeals the district court's imposition of a 70-month total sentence for aggravated identity theft, possession of 15 or more unauthorized access devices, and possession of a firearm by a felon.  On appeal, Eberhart argues (1) the district court erred because it treated as mandatory the Guideline's stolen firearm enhancement, U.S.S.G. § 2K2.1(b)(4)(A); (2) the district court utilized the incorrect standard in applying the stolen firearm enhancement; and (3) the stolen firearm enhancement is unconstitutional because it lacks a *mens rea* requirement. Because the record reveals that the district court properly understood its discretion, utilized the correct standard, and followed binding precedent from this circuit, we affirm Eberhart's sentence.

## I. Background

Tayheim Eberhart lived in an apartment in Miami while on supervised release.  On June 11, 2018, a probation officer visited Eberhart's residence.  Once inside, the probation officer observed illegal drugs and a firearm in plain view. Law enforcement obtained a federal search warrant and executed it the same day. The search recovered, among other things, a Smith & Wesson revolver, over 500 grams of marijuana, about 62 grams of cocaine, a bag with personal identification information, as well as envelopes addressed to victims, with one victim envelope including a credit card.  In fact, Eberhart possessed the names, dates of birth, and social security numbers of at least 200 persons.  Eberhart later admitted to living

2

alone, selling the seized cocaine and marijuana, and owning the Smith & Wesson gun.

Eberhart was charged in an indictment with one count of possessing 15 or more "unauthorized access devices," namely social security numbers, in violation of 18 U.S.C. § 1029(a)(3) (Count One); three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Two, Three, and Four); one count of possession with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)–(D) (Count Five); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six).  Pursuant to a plea agreement, Eberhart pleaded guilty to possessing the unauthorized access devices (Count One), one count of aggravated identity fraud (Count Two), and being a felon in possession of a firearm (Count Six).

Pursuant to § 3D1.2(c) of the Sentencing Guidelines manual, a presentence investigation report ("PSI") determined that Eberhart's offenses for possessing the unauthorized access devices and the firearm should be grouped.[1]  The probation officer determined that the grouped offenses' applicable guideline section was § 2K2.1, possession of a firearm by a convicted felon, because it was the most serious of the group, and calculated 20 as the base offense level under

---

[1] The Sentencing Guidelines allow the sentences for different counts to be "grouped," or calculated together, when the counts involve substantially the same harm.  U.S.S.G. § 3D1.2. Eberhart's identity theft count was not grouped with the other counts.  *See* 18 U.S.C. § 1028A.

§ 2K2.1(a)(4)(A).  When calculating the total offense level, the probation officer added two levels under § 2K2.1(b)(4)(A) because the firearm was stolen.  With other additions and subtractions not relevant to this appeal, Eberhart's total offense level was 23 and his criminal history category was III, which resulted in a guideline range of 57 to 71 months for the grouped offenses.[2]

Eberhart submitted numerous objections to the initial draft of the PSI, including an objection to the two-level stolen firearm enhancement because the government did not prove that the gun was stolen[3] and the enhancement improperly lacked a *mens rea* requirement.[4]  He argued that a pillar of criminal jurisprudence is that one "cannot commit a crime without having a degree *of mens rea*" and urged the court to consider Eberhart's lack of knowledge in deciding his sentence.  Eberhart also submitted a motion for a downward variance objecting to the stolen firearm enhancement.  Eberhart argued that, even if the district court could apply the stolen firearm enhancement under the guidelines, there may be constitutional issues with this enhancement.

---

[2] By statute, the identity fraud charge carried a mandatory two-year sentence in addition to any other sentence imposed.  *See* 18 U.S.C. § 1028A.

[3] The government initially filed an objection to the stolen gun enhancement as well, but later changed its position after finding evidence strongly suggesting that the gun was stolen.

[4] Eberhart also objected to the computation of his criminal history and requested a downward departure of one criminal history category because his criminal history was overrepresented.

Eberhart was sentenced on February 27, 2019. When the district court conducted Eberhart's sentencing hearing, the court asked Eberhart what argument he would have regarding the gun's stolen nature, other than his *mens rea* argument, if the government produced a report showing it was stolen. Eberhart only submitted that the question would remain as to whether a person should have his "loss of liberty . . . increased based on a situation where the evidence is not beyond a reasonable doubt that a gun . . . was stolen." Eberhart acknowledged this Court's precedent[5] holding that a stolen firearm enhancement does not require a particular *mens rea*, but still claimed that the district court could at least consider the lack of *mens rea* when deciding whether Eberhart's sentence is reasonable. In response, the government introduced a 2012 police incident and investigation report showing the gun was reported stolen, as well as a copy of Eberhart's statements to police concerning the gun. The report showed a gun with the same serial number as the one recovered from Eberhart's residence was stolen in 2012 from a home in Plantation, Florida. The government argued even absent the stolen gun report, Eberhart's admission to the police that he bought the gun for "eighty bucks" from "a crackhead," alone justified the enhancement because it reflected a reckless disregard for the gun's origin.

---

[5] *United States v. Richardson*, 8 F.3d 769 (11th Cir. 1993).

After acknowledging Eberhart's arguments about the stolen firearm enhancement, the court noted that "the law is clear this is an enhancement that can be considered at sentencing and does not require the beyond a reasonable doubt standard."  The court also stated that "even without the report of the firearm having been stolen, the circumstances of Mr. Eberhart's acquisition would give a reasonable person pause to think that the gun had not been legally sold" and found that "under either scenario" the enhancement was "appropriate."  Following Eberhart's request that the court also consider the factors "that would lead a person to conclude it was not necessarily stolen" as potential mitigating factors, the court reiterated that "under the law as it now stands I do find the enhancement is appropriate."

Thereafter, the court adopted the PSI and stated Eberhart's total offense level was 23, with a criminal history category of III.  When issuing Eberhart's sentence, the Court began by stating it considered the parties' arguments and recommendations, the PSI, which contained "the advisory guidelines," and the § 3553(a) factors.  Specifically, in considering the § 3553(a) factors, the court noted it was accounting for Eberhart's previous marijuana convictions in determining the appropriate sentence, and it said that Eberhart's commission of the instant offense while on probation was the catalyst for his category III criminal history.  The court decided that a downward variance was appropriate on the grounds that Eberhart's

criminal history was overrepresented.  Before issuing Eberhart's sentence, the court noted that one of its concerns was the number of pieces of personal identification Eberhart possessed.  The court sentenced Eberhart to a total of 70 months in prison: 46 months for the grouped offenses in Counts One and Six, and 24 months to be served consecutively for the aggravated credit card fraud offense in Count Two.  The court also sentenced him to four years' supervised release.[6]

Eberhart preserved "all of [his] written and oral objections, as well as any objections [] made [at sentencing] to the PSI and any other arguments regarding the sentencing here today" and Eberhart also reiterated that he wanted "to preserve the issue of the two level enhancement as to the stolen firearm."  Specifically, regarding the stolen firearm enhancement, Eberhart informed the court that there was another district court that "would not apply it because it did not agree with the lack of a *mens rea* requirement," but Eberhart also noted that he understood the court was bound by Circuit precedent.  The court stated that it understood and said:

> [f]or the record I find that there is sufficient evidence that [the gun] was stolen vis-a-vis the report, and in the alternative Mr. Eberhart's comments about his acquisition of the gun, I believe under the applicable standards make this sufficient for the Court to determine that he knew or should have known the gun had not been legally obtained.

---

[6] This period of supervised release was later corrected to three years, with the fourth running concurrently with the first.

> Whether or not there was specific knowledge of whether it was stolen -- as well as the varying ways it could have been introduced in an appropriate fashion -- I don't believe that I have to get that granular. I think under the case law the record supports the enhancement.

Eberhart filed a timely notice of appeal.

## II. Standard of Review

A district court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *United States v. McVay*, 447 F.3d 1348, 1352–53 (11th Cir. 2006). We review a district court's findings of fact supporting a sentencing enhancement for clear error. *United States v. Alberts*, 859 F.3d 979, 982 (11th Cir. 2017). We review legal questions, such as the constitutionality of an enhancement, *de novo*. *See United States v. Terry*, 60 F.3d 1541, 1543 (11th Cir. 1995) (noting that a "constitutional claim" is a "question of law subject to *de novo* review").

## III. Discussion

### A. The District Court Properly Understood Its Discretion and Limits

Eberhart argues that the district court failed to realize it had discretion not to apply an enhancement under the guidelines "on policy grounds." However, this contention misreads our precedent on the discretion afforded to judges at sentencing. The Supreme Court and this circuit have long held that district courts have discretion to impose a sentence outside the Guidelines' suggested range for a number of reasons, including a policy disagreement with the Guidelines. *See*

*Kimbrough v. United States*, 552 U.S. 85, 101–05 (2007) (upholding a district court's imposition of a lower sentence because of a policy disagreement with the 100-to-1 crack to powder cocaine sentencing disparity); *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (emphasizing that district courts have discretion in sentencing, even to the point that "[a] district court's sentence need not be the most appropriate one, it need only be a reasonable one."). Consistent with this principle, we will remand a case to the district court for resentencing when it appears that the district court did not appreciate the discretion it possessed to impose a sentence outside the Guidelines. *See United States v. Shelton*, 400 F.3d 1325, 1331 (11th Cir. 2005) ("As a result of *Booker*'s remedial holding, *Booker* error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory) (citing *United States v. Booker*, 543 U.S. 220, 260 (2005)).

But Eberhart does not claim that the district court misunderstood its ability to impose a sentence outside the Guidelines' range.[7] Instead, he argues that the district court had the ability *not to apply an enhancement* when *calculating the Guidelines' range* on account of a policy disagreement with the Guidelines. We do not agree with the premise that the district court had such discretion. Even

---

[7] Indeed, it would have been difficult for Eberhart to claim the district court did not understand its discretion to impose a sentence outside the guidelines range since the district court did, in fact, give a lower sentence than the guidelines recommended.

though the Guidelines are advisory, it is still a mandatory function of a sentencing court to calculate the applicable Guidelines range as an initial benchmark:

> That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing. Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system.

*Peugh v. United States*, 569 U.S. 530, 542 (2013); *see also Nelson v. United States*, 555 U.S. 350, 351 (2009) ("[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)."). More to the point, we review the district court's sentence to ensure that the court "*correctly* calculate[ed] the guidelines range." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008); *see also United States v. Chotas*, 968 F.2d 1193, 1196 (11th Cir. 1992) ("A sentencing court is not free to ignore a requirement for a particular adjustment under the guidelines."). If, as Eberhart argues, a district court could refuse to correctly determine the Guidelines whenever it disagreed with the policy reason behind them, there would no longer be procedural reasonableness review of sentences. Accordingly, this argument is without merit.

B. The District Court Did Not Apply the Wrong Standard

Eberhart argues that his enhancement for owning a stolen firearm was improperly applied because there was not enough evidence to justify the application. Section 2K2.1(b)(4)(A) provides for a two-level enhancement for being a felon in possession of a firearm if the firearm involved in the offense was stolen. It applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen. U.S.S.G. § 2K2.1 cmt. n.8(B)[8] The standard required to make a finding regarding a contested fact is preponderance of the evidence. *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). We accept the district court's finding that a firearm was stolen under § 2K2.1(b)(4) unless the finding is clearly erroneous. *See United States v. Holden*, 61 F.3d 858, 859 (11th Cir. 1995); 18 U.S.C.A. § 3742(e) (West).

Eberhart contends that the district court did not use "reliable and specific" evidence when coming to its conclusion as required by our precedent. *See Lawrence*, 47 F.3d at 1566. Eberhart conceded in a post-arrest statement that he purchased the firearm for a mere eighty dollars from a drug addict, a fact that made it likely the gun was stolen. But more to the point, the government produced a police investigation report that showed the gun discovered in Eberhart's residence

---

[8] The "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

11

had been reported stolen in 2012 in Plantation, Florida.[9]  This unchallenged report constituted sufficient evidence for the enhancement to apply.[10]

C.  This Court's Precedent Forecloses Eberhart's Constitutionality Argument

In *United States v. Richardson*, we held "that the lack of a *mens rea* element in the sentencing enhancement for possession of a stolen firearm does not offend due process because § 2K2.1(b)(4) does not create a crime separate and apart from the underlying felony."  8 F.3d 769, 770 (11th Cir. 1993).  Our prior-panel-precedent rule states that the holding of the first panel to address an issue becomes the law of the circuit, binding all subsequent panels, unless and until the first panel's holding is overruled by the Court sitting *en banc* or by the Supreme Court. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).  Eberhart did not cite a case from the Supreme Court or our own court sitting *en banc* that disapproved of, much less overruled, *Richardson*.  Thus, pursuant to the prior-

---

[9] When asked if Eberhart would have any argument regarding the enhancement if such a report was produced, Eberhart asserted that a preponderance of the evidence standard might not be constitutionally sufficient for increased imprisonment, not that the evidence was insufficient for a preponderance standard.  While we have not analyzed whether Eberhart waived any challenge to the sufficiency of the evidence under a preponderance standard—though we could have—it is telling that even Eberhart did not challenge that the report showed the firearm was stolen.

[10] There was some discussion at sentencing and in briefs about how Eberhart's statement regarding the purchase price of the gun was not sufficient to show that Eberhart knew the gun was stolen.  This determination is irrelevant, as U.S.S.G. § 2K2.1(b)(4)(A) by its own terms does not require knowledge of the stolen nature of the gun for the enhancement.

precedent rule, Eberhart's argument that the stolen firearm enhancement is

unconstitutional because it lacks a *mens rea* requirement is foreclosed.

**AFFIRMED.**